WILLIAM A. CARNAHAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carnahan v. Commissioner
Docket No. 12621-92
United States Tax Court
T.C. Memo 1994-163; 1994 Tax Ct. Memo LEXIS 164; 67 T.C.M. (CCH) 2689; April 18, 1994, Filed *164 Decision will be entered under Rule 155. William A. Carnahan, pro se. For respondent: Aretha Jones. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653
Sec. 6654
(a)(2) 1985
$ 35,294.90
$ 8,125.72
$ 1,764.75
[1]
$ 1,816.11
Additions to Tax Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)(A)
Sec. 6553
Sec. 6654
(a)(1)(B)
1986
$ 445.50
$ 111.37
$ 22.28
[1]
-- After concessions, the issues for decision are: (1) Whether and when petitioner omitted income; and (2) whether petitioner is liable for additions to tax as determined by respondent. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by *165 this reference. Petitioner resided in Washington, D.C., at the time the petition was filed. In 1979, petitioner became a partner in the law firm of LeBoeuf, Lamb, Leiby & MacRae (LeBoeuf Lamb). In 1982, the law firm became a partnership of professional corporations, and petitioner became a salaried employee of his professional corporation, William A. Carnahan, P.C. (the P.C.). Through June 30, 1985, petitioner drew a regular salary from his P.C., which received its income from LeBoeuf Lamb. Beginning in early 1985, petitioner began to experience severe depression, anxiety, and paranoia. Due to these symptoms, petitioner was admitted to St. Elizabeth's Hospital on May 20, 1985, and was subsequently transferred to George Washington University Medical Center, where he stayed through August 26, 1985. Petitioner was confined to his home during the remainder of 1985. Petitioner was unable to return to the practice of law in 1986 or 1987. After his hospitalization, petitioner believed that he would never work again as an attorney. The P.C. received a total of $ 84,403 from LeBoeuf Lamb during 1985, including a settlement payment of $ 53,247.95, reflecting the P.C.'s interest in *166 LeBoeuf Lamb upon its withdrawal from the partnership due to petitioner's hospitalization. The settlement check paid to the P.C. by LeBoeuf Lamb was deposited in the P.C.'s account with the Fund for Government Investors, Inc., on August 28, 1985, bringing the balance of that account to $ 60,487.45. On December 31, 1985, the ending balance in the same account had increased to $ 61,959.62, due to dividends. Petitioner drew a salary from the P.C. of $ 44,000 during 1985. In 1986, petitioner returned to school, pursuing a master's degree in international trade and finance. During 1986, petitioner withdrew over $ 48,750 from the P.C.'s account to pay his personal living expenses, hospital bills, club dues, and educational expenses. These withdrawals were not loans and petitioner did not intend to repay the funds. On December 31, 1986, the balance in the P.C.'s account with the Fund for Government Investors, Inc., was $ 13,204.90. Petitioner did not file Federal income tax returns for either 1985 or 1986. Nor did his P.C. file returns for those years. OPINION Omitted Income
The parties agree that petitioner drew a salary in 1985 from the P.C. in the amount of $ 44,000, *167 and that this amount should have been reported as income in 1985. Respondent contends, in addition, that petitioner constructively received the remaining $ 40,403 paid to William A. Carnahan, P.C., in 1985. Respondent's constructive receipt theory misses the mark. The constructive receipt doctrine requires a taxpayer to include income in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time. Sec. 1.451-2(a), Income Tax Regs. The doctrine precludes the taxpayer from deliberately turning his back upon income otherwise available. Martin v. Commissioner, 96 T.C. 814, 823 (1991). However, a shareholder is not taxable on corporate funds merely because he has the authority to influence the actions of the corporation and the authority to withdraw funds. Jerome Castree Interiors, Inc. v. Commissioner, 64 T.C. 564, 570 (1975), affd. without published opinion 539 F.2d 714 (7th Cir. 1976). Respondent relies primarily on such assertions to support application of constructive receipt here. While it is true *168 that petitioner controlled the corporation and had authority to withdraw from its accounts, such facts alone do not support an application of constructive receipt. "It is the possession of the right (and not merely the power) to receive funds which forms the basis of the doctrine". Evans v. Commissioner, T.C. Memo. 1988-228 (citing F.D. Bisset & Son, Inc. v. Commissioner, 56 T.C. 453, 463 (1971)). Whether or not the doctrine of constructive receipt applies is a question of fact. Hughes v. Commissioner, 42 T.C. 1005, 1015 (1964). Funds are not constructively received until the corporation takes the necessary action to set them apart for the taxpayer. Jerome Castree Interiors, Inc. v. Commissioner, supra at 570. Here, there is no evidence that, in 1985, the P.C. set aside or authorized any of the $ 40,403 for payment to petitioner. Nor is there any evidence in the record to suggest that petitioner actually received any amount from the corporation in 1985 other than the salary stipulated by the parties. In support of a constructive receipt theory, *169 respondent also argues that the P.C. performed no real function after the termination of its partnership interest. Such facts might be relevant if respondent were arguing -- under Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943) -- that the P.C. was no longer a separate entity for tax purposes. Respondent makes no such argument however, and the facts for 1985 provide no support for it in any event. Petitioner did not use corporate funds for personal expenses in 1985, and there is no evidence that corporate formalities were not observed. The doctrine of constructive receipt is used sparingly and is invoked only when it is clear that the taxpayer has an unrestricted right to receive payment and his failure to do so is attributable to exercise of his own choice. Basila v. Commissioner, 36 T.C. 111, 115-116 (1961). In the absence of an amount specifically designated for petitioner by the P.C., or any subsequent backturning by petitioner, we decline to apply the doctrine in this case. In the alternative, respondent argues that petitioner actually received the $ 40,403 in 1986. [1] We agree. The settlement *170 check paid to the P.C. by LeBoeuf Lamb was deposited in the P.C.'s account with the Fund for Government Investors, Inc., on August 28, 1985, bringing the balance of that account to $ 60,487.45. On December 31, 1985, the ending balance in the same account had increased to $ 61,959.62, due to dividends. During 1986, petitioner withdrew over $ 48,750 from the P.C.'s account to pay his personal living expenses, hospital bills, club dues, and educational expenses. These withdrawals were not loans, and petitioner did not intend to repay the funds. On December 31, 1986, the balance in the P.C.'s account with the Fund for Government Investors, Inc., was $ 13,204.90. We hold that $ 40,403 of the income that respondent originally determined was received by petitioner in 1985 was actually received and was taxable to petitioner in 1986. *171 Petitioner testified at trial that he considered certain expenses paid from the P.C.'s account in 1986 to be deductible as expenses incurred for the purpose of maintaining petitioner's skills as a lawyer. On brief, however, petitioner made no arguments regarding these expenses and appears to have abandoned any claim that they are deductible. In any event, most of them are clearly personal and nondeductible under section 162 or any other section. [2]
Additions to Tax
Respondent determined additions *172 to tax under section 6651(a)(1) for petitioner's failure to timely file tax returns, section 6653(a) for negligence or intentional disregard of rules and regulations, and section 6654 for underpayment of estimated tax. Petitioner bears the burden of proof on each of these issues. Rule 142(a); see Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner was confined to St. Elizabeth's and George Washington Hospitals for severe mental illness during 1985. Having observed petitioner at trial and after reviewing the testimony and documents regarding petitioner's condition, we believe petitioner's claim that he continued to be mentally incapacitated during the period relevant to this case. Proof of mental incapacitation or disability can be a basis for relief from the additions to tax that are in issue. See sec. 6654(e)(3); Williams v. Commissioner, 16 T.C. 893, 906 (1951); Jones v. Commissioner, T.C. Memo. 1988-542. We find that petitioner was mentally incapacitated and disabled during the relevant period and, therefore, hold that he is not liable for the additions to tax. Decision *173 will be entered under Rule 155. Footnotes
1. To be determined.↩
1. Petitioner objects to respondent's alternative argument -- raised in the amended answer -- on procedural due process grounds. Rule 41 is intended to reflect a liberal attitude in favor of pleading amendments. Derksen v. Commissioner, 84 T.C. 355, 357 (1985). The impetus for the amendment to the answer was a set of documents received by respondent from petitioner on Oct. 15, 1993, only 1 week prior to trial. This information indicated that part of the income that respondent had attributed to 1985 may not have been received until 1986. We addressed petitioner's objections at trial, noting that just prior to trial petitioner produced significant additional information that could have a significant impact on the year for which distributions from the P.C. may have been includable in petitioner's taxable income. However, these changes did not increase the total amount of petitioner's income. The only effect of respondent's amendment is to shift the date of alleged receipt of the income in question from 1985 to 1986. As explained, infra↩, there is no question that petitioner received the amount at issue.
2. At best, petitioner might have argued for the deductibility of certain educational expenses. However, petitioner provided no evidence to show how his educational program related to his prior trade or business as an attorney. Indeed, after his hospitalization, petitioner believed that he "would never work again" as an attorney. Also, petitioner did not specify whether he believed the expenses were deductible by himself or by the P.C. As noted, petitioner filed no returns for either himself or the P.C. in 1986.↩