T.C. Memo. 2003-19

UNITED STATES TAX COURT

JAMES JOSEPH, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7681-00.                    Filed January 21, 2003.

James Joseph, Jr., pro se.

Linda A. Neal, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined deficiencies in
petitioner's Federal income tax and additions to tax and
penalties as follows:

|       |            | Additions to Tax |           |
| Year  | Deficiency | Sec. 6651(a)(1)  | Sec. 6662 |
|-------|------------|------------------|-----------|
| 1992  | $9,429     | $464             | $1,886    |
| 1993  | 8,878      | 1,332            | 1,776     |
| 1994  | 3,861      | --               | 772       |

The issues for decision are:

1.  Whether petitioner had unreported income of $35,125 in 1992, $30,247 in 1993, and $16,305 in 1994.  We hold that he had unreported income of $29,123 for 1992, $24,715 for 1993, and $16,095 for 1994.

2.  Whether petitioner is liable for the addition to tax for failure to file timely under section 6651(a)(1) for 1992 and 1993 and the accuracy-related penalty under section 6662 for 1992, 1993, and 1994.  We hold that he is.

Section references are to the Internal Revenue Code as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  <u>Petitioner</u>

Petitioner resided in Marrero, Louisiana, when he filed the petition.

Petitioner received Social Security payments of $6,491 in 1992 and $6,664 in 1993.[1]  He did not report those payments as income on his returns for 1992 and 1993.

B.    Petitioner's Return Preparation Business

Petitioner has been a self-employed tax return preparer from 1980 through the years in issue.  He charged fees ranging from $0 to at least $70 per return in 1992-94.

In the years in issue, petitioner generally filed his clients' returns by transmitting them electronically through banks to respondent.  Petitioner filed paper returns for clients whose electronic returns were rejected by respondent.  Petitioner included his name and return preparer number on the returns he prepared.

Taxpayers claimed refunds on 99 percent of the returns prepared by petitioner.  Petitioner arranged loans in anticipation of refunds (refund anticipation loans or RALs) for taxpayers for whom he electronically filed returns.  Banks approved refund anticipation loans in the amount of a client's anticipated refund and advanced that amount to the client, less fees for the bank and petitioner.  The banks paid petitioner a $30 fee for each RAL.  The bank issuing the RAL also sometimes

---

[1]  Respondent determined that $3,246 of those payments is taxable income to petitioner in 1992 and $3,342 is taxable income in 1993.

paid petitioner's return preparation fee from the RAL proceeds. The bank issuing the RAL received the refund from respondent.

C.    Petitioner's Records and Returns

Petitioner did not keep track of his income. His files and records were disorganized. He estimated the amount of income to report on his tax returns. Petitioner reported that he had gross receipts from preparing tax returns of $4,695 for 1992, $13,601 for 1993, and $22,895 for 1994.

Petitioner filed his 1992 return on April 26, 1993, and his 1993 return on June 20, 1994. Respondent did not grant any extensions of time to petitioner to file those returns. Petitioner did not pay estimated tax in 1992 or 1993.

D.    Respondent's Examination and Determination

Respondent's revenue agent asked petitioner for records of his checking and savings accounts and canceled checks and deposit slips, but he did not give any of those records to the agent. The revenue agent had no records from petitioner. The revenue agent asked petitioner to complete a personal living expense statement, but petitioner did not do so.

Respondent's agent used Internal Revenue Service computer records to identify returns bearing petitioner's return preparer number. Respondent's agent found petitioner's preparer number on 726 returns for 1992, 756 returns for 1993, and 700 returns for 1994. In 1997, respondent's revenue agent mailed a questionnaire

to individuals whose 1992-94 returns bore petitioner's preparer number. In the questionnaire respondent's agent asked how much the individuals had paid petitioner to prepare their returns. The revenue agent received 151 responses to the questionnaire. The responses stated that petitioner received fees from $0 to $70 per return. Based on the responses which indicated petitioner prepared their returns, petitioner received an average return preparation fee of $17 for 1992, $21 for 1993, and $28 for 1994.

Two people who responded to the questionnaire attached to their responses records from their banks which showed that the banks had paid petitioner a return preparation fee of $25 per return in 1992, $28 per return in 1993, and $26 per return in 1994 and a $30 fee for every RAL for each of the years in issue. Based on those two responses and third party bank records attached to them, respondent's agent estimated that petitioner received an average return preparation fee of $25 for each return he prepared in 1992, $28 for each return he prepared in 1993, and $26 for each return he prepared in 1994. Respondent's revenue agent also assumed that petitioner received a $30 RAL fee for each return he filed in 1992-94.

Respondent's agent multiplied her estimate of petitioner's preparer fees and the $30 RAL fee by the number of returns prepared and filed by petitioner for each year. Thus,

respondent's agent estimated that petitioner had the following amounts of gross receipts:

|                                                        | 1992      | 1993      | 1994      |
|--------------------------------------------------------|-----------|-----------|-----------|
| Returns prepared                                       | 724       | 756       | 700       |
| Return preparer fee                                    | $25       | $28       | $26       |
| RAL fee                                                | $30       | $30       | $30       |
| Total fee per return                                   | x $55     | x $58     | x $56     |
| Total gross receipts                                   | $39,820   | $43,848   | $39,200   |
| Less gross receipts reported                           | $4,695    | $13,601   | $22,895   |
| Adjustment per notice of deficiency (unreported income) | $35,125   | $30,247   | $16,305   |

OPINION

A.   Whether Petitioner Had Unreported Income in 1992-94

1.   Positions of the Parties

Respondent contends that petitioner understated his income by $35,125 for 1992, $30,247 for 1993, and $16,305 for 1994. Petitioner contends that he reported all of his income in 1992-94 and that respondent's method of reconstructing his income is inaccurate.

2.   Whether Respondent's Determination Is Entitled to Presumption of Correctness

The U.S. Court of Appeals for the Fifth Circuit, the circuit to which this case is appealable, has stated that, in cases

involving unreported income, to be entitled to a presumption of correctness, the deficiency determination must be supported by some predicate evidence that the determination is correct. <u>Sealy Power, Ltd. v. Commissioner</u>, 46 F.3d 382, 386 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1992-168; <u>Portillo v. Commissioner</u>, 932 F.2d 1128, 1132 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68.

Petitioner provided no records to respondent. Respondent may, in the absence of records, use a reasonable method to reconstruct a taxpayer's income. <u>Holland v. United States</u>, 348 U.S. 121, 131 (1954). Respondent estimated the amount of petitioner's return preparer fees to be $25 for 1992, $28 for 1993, and $26 for 1994 based on third party bank records attached to two responses to respondent's survey. Respondent multiplied those estimates by the number of returns bearing petitioner's return preparer number for each year. Respondent estimated the amount of RAL fees petitioner received by multiplying $30 by the number of returns bearing petitioner's return preparer number for each year. Respondent added these estimates of petitioner's return preparer fees and RAL fees to estimate the amount of petitioner's gross receipts for 1992-94.

Respondent's determination is amply supported by sufficient predicate evidence. Thus, petitioner bears the burden of showing

whether the amount of unreported income determined by respondent is excessive.[2]

### 3. Unreported Receipts From Tax Preparation Business

Petitioner contends that he reported all of the receipts shown on the bank records for his tax preparation business. We disagree based on the responses to respondent's survey.

Petitioner contends that he prepared fewer than 395 returns for each year in issue. We disagree because petitioner's return preparer number appears on 700 or more returns for each year in issue. Petitioner contends that his return preparer number appeared on more than one income tax return for each client for a given tax year. There is no evidence supporting petitioner's position. He offered in evidence a computer printout entitled "1992 Preparer Fee Reconcilement", which petitioner testified was a printout of what the bank told him was money the bank deposited in his account in 1992; about 350 2-inch by 8-inch strips of paper entitled "Refund Anticipation Loan, 1992 Tax Year, Tax Preparer's Receipt" with a check number, Social Security number, name, and address of a taxpayer on each strip; and 25 client

---

[2] Petitioner contends that respondent bears the burden of proof but does not state the grounds for this contention. The examination began before July 22, 1998. Sec. 7491 applies to court proceedings arising in connection with examinations beginning after July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726. Thus, sec. 7491(a) does not apply, and petitioner bears the burden of proof on all issues in this case. Rule 142(a)(1).

return files for 1993. Those documents were not admitted in part because petitioner did not exchange them 15 days before trial as required by our standing pretrial order served on him more than 5 months before trial. Materials not provided in compliance with our standing pretrial order may be excluded from evidence. See Rules 104(c)(2), 131(b); Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996).

The documents that petitioner offered in evidence represent, at best, only a fraction of the returns that petitioner prepared in the years in issue. They do not show the amounts that petitioner received for RAL fees or tax preparation fees. They do not show that petitioner's return position was correct because they do not establish how many clients he had or how much he received from each of them for the years in issue.

Petitioner makes various personal attacks on respondent's revenue agent. Those allegations are unsupported by the record and are amply refuted by evidence of the thorough and professional approach taken by respondent's agent.

Petitioner received an average return preparation fee of $17 for 1992, $21 for 1993, and $28 for 1994. These averages are based on all of the responses to respondent's agent's survey in the record. As shown below, we adjust respondent's estimates because (1) the average fee based on all of the survey responses is a better basis for estimating the amount of fees petitioner

received than using only bank records attached to two survey
responses, and because (2) the record shows that petitioner
received an RAL fee for 99 percent (not 100 percent as
respondent's agent assumed) of the returns he prepared and filed.

|                                    | 1992     | 1993     | 1994     |
|------------------------------------|----------|----------|----------|
| Returns prepared[1]                | 724      | 756      | 700      |
| Return preparer fee                | $17      | $21      | [2]$26   |
| Total estimated preparer fee       | $12,308  | $15,876  | $18,200  |
| 99% of returns prepared            | 717      | 748      | 693      |
| RAL fee                            | $30      | $30      | $30      |
| Total estimated RAL fee            | $21,510  | $22,440  | $20,790  |
| Total gross receipts               | $33,818  | $38,316  | $38,990  |
| Less gross receipts reported       | $4,695   | $13,601  | $22,895  |
| Unreported income                  | $29,123  | $24,715  | $16,095  |

[1]  A few of the survey responses for taxpayers whose returns
bore petitioner's preparer number stated that someone other than
petitioner prepared the return.  We disregard those statements
because the record contains no other explanation why petitioner's
preparer number appeared on those returns unless he prepared them.

[2]  Although the average preparation fee for 1994 was $28, we
treat respondent's estimate of $26 as a concession.

We conclude that petitioner had unreported income of $29,123
for 1992, $24,715 for 1993, and $16,095 for 1994.[3]

_____

[3]  Petitioner contends that it is inappropriate to use
Bureau of Labor statistics to determine his deficiency.  We need
not decide petitioner's contention because respondent's
determination is not based on Bureau of Labor statistics.

4.  Social Security Benefits

Respondent determined that petitioner had taxable Social Security benefits of $3,246 in 1992 and $3,342 in 1993. Petitioner contends that his Social Security payments were nontaxable because they were disability benefits. We disagree; Social Security disability benefits are taxed the same as other Social Security benefits.[4] Sec. 86(d)(1); Thomas v. Commissioner, T.C. Memo. 2001-120.

B.  Whether Petitioner Is Liable for the Addition to Tax for Failure To Timely File His 1992 and 1993 Returns and the Accuracy-Related Penalty Under Section 6662 for 1992-94

1.  Failure To File Timely

A taxpayer is liable for an addition to tax of up to 25 percent for failure to file timely a Federal income tax return unless the failure was due to reasonable cause and not willful neglect. Sec. 6651(a)(1).

Petitioner filed his 1992 and 1993 returns late. Thus, petitioner bears the burden of proving that the failure is due to reasonable cause and not willful neglect.[5] Rule 142(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).

---

[4] Petitioner does not contend that respondent applied the formula in sec. 86 incorrectly. Any adjustments to petitioner's modified adjusted gross income will be made during computations under Rule 155.

[5] Sec. 7491 does not apply to this proceeding. See note 2 above.

Illness or incapacity may constitute reasonable cause if the taxpayer establishes that he was so ill that he was unable to file. <u>Williams v. Commissioner</u>, 16 T.C. 893, 906 (1951). On brief, petitioner contends that he filed his returns late because he was ill. We disagree. Petitioner was well enough to prepare and file hundreds of tax returns for each of the years in issue. We conclude that petitioner is liable for the addition to tax for failure to timely file his 1992 and 1993 returns.

2.  <u>Accuracy-Related Penalty</u>

Petitioner testified that he did not keep track of his income during the years in issue. He did not provide respondent with any records of his income or expenses for those years. A taxpayer's failure to properly substantiate items is evidence of negligence. See sec. 6662(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 449 (2001).

Petitioner made no argument about the accuracy-related penalty at trial or on brief. A taxpayer may be deemed to concede an issue that was raised in the petition if he or she makes no argument at trial or on brief relating to that issue. <u>Levin v. Commissioner</u>, 87 T.C. 698, 722-723 (1986), affd. 832 F.2d 403 (7th Cir. 1987); <u>Zimmerman v. Commissioner</u>, 67 T.C. 94,

104 n.7 (1976).  We conclude that petitioner is liable for the accuracy-related penalty under section 6662 for 1992-94.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.