# United States Tax Court

T.C. Memo. 2022-89

GEORGE ANTON REMISOVSKY AND ELLEN JONES-
REMISOVSKY,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 11945-20L.            Filed August 30, 2022.

————

George Anton Remisovsky and Ellen Jones-Remisovsky, pro sese.

*Brian S. Jones* and *David D. Lee*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: In this collection due process (CDP) case petitioners seek review pursuant to sections 6320(c) and 6330(d)(1) of determinations by the Internal Revenue Service (IRS or respondent) to uphold collection actions.[1] Petitioners dispute respondent's determination of additions to tax for 2013, contending that their failures timely to file an income tax return and pay tax were "due to reasonable cause and not due to willful neglect." § 6651(a)(1) and (2). Finding that petitioners have not carried their burden of proving their entitlement to this defense, we will enter judgment for respondent sustaining the collection actions.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times. We round all monetary amounts to the nearest dollar.

**Served 08/30/22**

[*2]                              FINDINGS OF FACT

The following facts are derived from the parties' pleadings, the administrative record of the CDP proceeding, and the other documents and testimony admitted into evidence at trial. Petitioners resided in New Jersey when they timely petitioned this Court.

During 2013 petitioner husband was a medical doctor and petitioner wife was a retail manager. They did not file a timely Federal income tax return for 2013. On the basis of third-party reporting the IRS prepared a substitute for return as authorized by section 6020(b).

On May 25, 2016, petitioners filed a delinquent return for 2013, reporting wages of $234,912. Most of these wages were earned by petitioner husband for performing services as a physician. The return showed a tax liability of $57,197 and a balance due of $19,690, but petitioners enclosed no payment with the return. On February 20, 2017, the IRS assessed the tax shown as due on the return, plus additions to tax of $4,413 and $3,432 under section 6651(a)(1) and (2), respectively.

On February 25, 2019, in an effort to collect petitioners' unpaid liability for 2013, the IRS sent them Letter 1058, Final Notice of Intent to Levy and Your Right to a Hearing (levy notice). Two weeks later the IRS sent them Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing (lien notice), also for 2013. On March 22, 2019, petitioners timely requested a CDP hearing for 2013, disputing the levy and lien notices, challenging their liability for additions to tax, and expressing interest in a collection alternative.[2]

The case was assigned to a settlement officer (SO) in the IRS Office of Appeals (Appeals).[3] The SO verified that petitioners' 2013 tax liability, including the additions to tax, had been properly assessed and

---

[2] On their Form 12153, Request for a Collection Due Process or Equivalent Hearing, petitioners also challenged IRS collection action for 2012, 2016, and 2017. But they supplied no evidence that the IRS had taken collection action against them for 2017, and their hearing request with respect to 2012 and 2016 was untimely. They were afforded an "equivalent hearing" for 2012 and 2016; the outcome of an equivalent hearing is not subject to judicial review. *See Weiss v. Commissioner*, 147 T.C. 179, 188 (2016), *aff'd per curiam*, No. 16-1407, 2018 WL 2759389 (D.C. Cir. May 22, 2018); *Craig v. Commissioner*, 119 T.C. 252, 258–59 (2002); Treas. Reg. § 301.6330-1(i)(2), Q&A-16.

[3] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

[*3] that all other requirements of law and administrative procedure had been met. The SO convened a telephone conference during which petitioners requested abatement of the 2013 additions to tax. The SO explained that they did not qualify for "first time abatement" under an IRS administrative policy. That was because additions to tax had likewise been determined against them for 2011 and had not been reversed. *See* Internal Revenue Manual (IRM) 20.1.1.3.3.2.1 (Nov. 21, 2017).

Petitioner husband then alleged alcoholism and depression as supplying "reasonable cause" for petitioners' failures to satisfy their 2013 tax obligations. He stated that he had been hospitalized for alcoholism in 1990, that he suffered "a relapse of [his] alcoholism in 2012," and that he was able to continue practicing medicine because he was "a binge drinker while active." He submitted a letter dated July 23, 2019, from a psychiatrist who was then treating him for depression. The letter stated that petitioner husband "also has a history of being alcoholic, although he has had periods of sobriety," and that "his cognitive capacity to comply with his financial obligations and to pay his taxes in timely fashion were severely diminished."

The SO determined that petitioners were ineligible for penalty abatement for reasonable cause because they did not meet the conditions set forth in the IRM. *See* IRM 20.1.1.3.2.2.1 (Nov. 25, 2011). The SO offered them an installment agreement calling for payments of $654 per month, with the additions to tax being included in the liability on which the payments were calculated. Petitioners declined to accept that agreement. Because they declined her offer of an installment agreement and sought no other collection alternative, the SO decided to close the case. On September 2, 2020, after a hiatus related to the COVID-19 pandemic, Appeals issued petitioners a notice of determination sustaining the levy and lien notices for 2013.

Petitioners timely petitioned this Court. The Petition contends that the SO erred in declining to abate the 2013 additions to tax and that she "arbitrarily refused to grant an installment agreement." We tried the case remotely on June 13, 2022.

## OPINION

A. *Standard of Review*

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters

**[\*4]** for such review are marked out by our precedents. Where the validity of a taxpayer's underlying liability is properly at issue, we review the IRS determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not in dispute, we review the IRS decision for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

"A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the Commissioner seeks to collect." *Dykstra v. Commissioner*, T.C. Memo. 2017-156, 114 T.C.M. (CCH) 183, 187. Nothing in the record indicates that petitioners had a prior opportunity to dispute their underlying liability for the 2013 additions to tax. *See Montgomery v. Commissioner*, 122 T.C. 1, 9 (2004). They timely raised this issue before the SO, and respondent agrees that it is properly before us. We thus review de novo petitioners' challenge to this portion of their 2013 liability. *See Love v. Commissioner*, T.C. Memo. 2019-92, 118 T.C.M. (CCH) 94, 96.

B.    *Underlying Liability*

Petitioners contend that they had "reasonable cause" for failing timely to file their 2013 return and pay their 2013 tax. A delay in filing is due to reasonable cause if the taxpayer "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." Treas. Reg. § 301.6651-1(c)(1). To prove reasonable cause for failure to pay timely, the taxpayer must show that he "exercised ordinary business care and prudence in providing for payment of his tax liability and nevertheless was either unable to pay the tax or would suffer undue hardship if he paid the tax on the due date." *Hardin v. Commissioner*, T.C. Memo. 2012-162, 103 T.C.M. (CCH) 1861, 1863 (citing Treas. Reg. § 301.6651-1(c)(1)). Financial hardship "generally does not affect a person's ability to file." IRM 20.1.1.3.3.3(1)(a) (Aug. 5, 2014). Petitioners bear the burden of proving "reasonable cause." *See Higbee v. Commissioner*, 116 T.C. 438, 446 (2001).

Petitioners do not allege that financial hardship prevented them from discharging their 2013 tax obligations timely. At trial they contended that petitioner husband suffered from alcoholism and depression and that these conditions are recognized as "diseases" by medical

**[\*5]** authorities.  Accepting the latter proposition as true, petitioners were required to prove that petitioner husband suffered from these diseases at the relevant times and that his condition was so severe as to preclude timely filing and payment.  Petitioners submitted no credible evidence on either point.

"Where a taxpayer's disability is raised as part of a reasonable cause defense, we have looked to the severity of the disability and the impact it had on the taxpayer's life . . . ." *Jones v. Commissioner*, T.C. Memo. 2006-176, 92 T.C.M. (CCH) 168, 170.  "For illness or incapacity to constitute reasonable cause, [the taxpayer] must show that she was incapacitated to such a degree that she could not file her returns." *Thomas v. Commissioner*, T.C. Memo. 2005-258, 90 T.C.M. (CCH) 477, 478.  Illness or incapacity "generally does not prevent the taxpayer from filing returns where the taxpayer is able to continue his business affairs despite the illness or incapacity." *Hazel v. Commissioner*, T.C. Memo. 2008-134, 95 T.C.M. (CCH) 1528, 1530; *see also Watts v. Commissioner*, T.C. Memo. 1999-416, 78 T.C.M. (CCH) 1207, 1208 ("[A] taxpayer's selective inability to perform his or her tax obligations, while performing their regular business, does not excuse failure to file.").

Petitioner husband offered generalized testimony that he had struggled with depression and alcoholism.  But at trial he supplied no testimony that he suffered from these conditions at the relevant times—i.e., in early 2014, when the 2013 return should have been prepared and filed, or in May 2016, when the delinquent return was submitted with no payment enclosed.  *See Hazel,* 95 T.C.M. (CCH) at 1530 (noting that the taxpayer must submit "evidence of his incapacity during the period when th[e] return should have been filed").  The doctor's letter that he submitted to the SO does not help him over this hurdle.  That letter, dated July 2019, indicated that petitioner husband had suffered from alcoholism at unspecified times but also had "periods of sobriety."

Assuming arguendo that petitioner husband was ill at the relevant times, he offered no evidence whatever concerning the severity of his conditions.  This is not a case where the taxpayer's mental incapacity was evidenced by confinement in hospitals for severe mental illness. *Cf. Carnahan v. Commissioner*, T.C. Memo. 1994-163, 67 T.C.M. (CCH) 2689, 2691, *aff'd*, 70 F.3d 637 (D.C. Cir. 1995).  Nor is it a case where the taxpayer was admitted to a drug and alcohol treatment center at the time his tax return was due.  *Cf. Harbour v. Commissioner*, T.C. Memo. 1991-532, 62 T.C.M. (CCH) 1083, 1084–85.

[*6]    There is no evidence that petitioner husband after 1990 was hospitalized for his illness or that his illness in any sense incapacitated him during 2013–2014. He simply failed to establish "that he was so ill he was unable to file." *Joseph v. Commissioner*, T.C. Memo. 2003-19, 85 T.C.M. (CCH) 786, 789–90. Quite the contrary; he practiced medicine throughout 2013 and received substantial wages from that work. We have regularly rejected "reasonable cause" defenses based on alcoholism, depression, and other illnesses where the taxpayer continued to perform his or her regular business duties at the relevant times. *See Hazel,* 95 T.C.M (CCH) at 1530; *Thomas*, 90 T.C.M. (CCH) at 478; *Joseph*, 85 T.C.M. (CCH) at 790; *Watts*, 78 T.C.M. (CCH) at 1208; *Gardner v. Commissioner*, T.C. Memo. 1982-542*,* 44 T.C.M. (CCH) 1168, 1172.

Assuming arguendo that petitioner husband was too ill to file, petitioners presented no evidence that petitioner wife (who did not testify at trial) was unable to discharge this obligation. Petitioner wife was employed in 2013 as a retail manager and had an independent filing obligation. Each taxpayer has a nondelegable duty to file. *See United States v. Boyle*, 469 U.S. 241, 252 (1985). The incapacity of one's spouse does not constitute a per se excuse for failure to file a return. S*ee Fambrough v. Commissioner*, T.C. Memo. 1990-104, 58 T.C.M. (CCH) 1541, 1542 (holding that tending to spouse's illness did not give taxpayer reasonable cause for failure to file when "he was able to continue performing his daily business operations"). Indeed, petitioners at the relevant times appear to have had an established relationship with an accountant, who prepared their 2012 return and hand-delivered it to the IRS in mid-November 2013. Petitioners did not explain why one of them could not have telephoned the accountant to set the wheels in motion for the preparation and filing of a 2013 return.

C.    *Abuse of Discretion*

In deciding whether the SO abused her discretion in sustaining the collection action, we consider whether she: (1) properly verified that the requirements of applicable law and administrative procedure have been met, (2) considered any relevant issues petitioners raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioners] that any collection action be no more intrusive than necessary." §§ 6320(c), 6330(c)(3). Our review of the record establishes that the SO properly discharged all of her statutory responsibilities.

**[\*7]**     Petitioners expressed interest in an installment agreement. After reviewing their financial information, the SO determined that they qualified for an installment agreement with a $654 monthly payment. In calculating this monthly payment, the SO correctly determined that the 2013 additions to tax, not qualifying for abatement, should be included in petitioners' balance due. Petitioners refused to accept that offer and made no concrete counterproposal. An SO is not obligated to pursue a collection alternative where no such proposal is made. *McLaine v. Commissioner*, 138 T.C. 228, 243 (2012); *Nimmo v. Commissioner*, T.C. Memo. 2020-72, 119 T.C.M. (CCH) 1504, 1506.

Petitioners do not challenge the SO's determination that they did not meet the standards for withdrawal of the tax lien. *See* § 6323(j). Because they sought no other collection alternative, the SO did not abuse her discretion in closing the case and sustaining the collection actions.

To implement the foregoing,

*An appropriate decision will be entered.*