[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 16-10883
Non-Argument Calendar

————————————————

Agency No. 019496-13


MARK D. JASPERSON,

Petitioner - Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.


————————————————

Petition for Review of a Decision
of the U.S.Tax Court

————————————————

(August 31, 2016)

Before TJOFLAT, ROSENBAUM and WILSON, Circuit Judges.

PER CURIAM:

Mark Jasperson appeals the United States Tax Court's decision determining that he improperly claimed loss deductions for tax years 2008–2010 and is subject to a 20% penalty of the amount of the understatement for each of those years. After careful review, we affirm.

I.

In 1998, Jasperson, a former bankruptcy attorney, incorporated 5215 Development, Inc. ("5215 Development"). 5215 Development was an S corporation that liquidated video stores.[1] Jasperson was the sole owner. Though 5215 Development was initially profitable, Jasperson claims that it lost $750,262 and $237,596 in 2005 and 2006 respectively. He carried forward those losses on his individual returns for 2008–2010 claiming net operating loss ("NOL") deductions for those years.[2] For the years 2008–2010, Jasperson claimed NOL carryover deductions of $217,768, $58,855, and $110,080 respectively. Jasperson's tax returns for the years 2008–2010 reflected those carryover

---

[1] Subchapter S of the Internal Revenue Code allows shareholders of qualifying corporations, "to elect a 'pass-through' taxation system under which income is subjected to only one level of taxation. The corporation's profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns . . . . Corporate losses and deductions are passed through in a similar manner." *Gitlitz v. Comm'r.*, 531 U.S. 206, 209, 121 S. Ct. 701, 704, 148 L. Ed. 2d 613 (2001); 26 U.S.C. § 1366(a)(1)(A). These corporations are called S corporations.

[2] An S corporation shareholder may carry forward losses on his individual tax income. *See* 26 U.S.C. § 1366(d). A "net operating loss" is defined as "the excess of the deductions allowed by this chapter over the gross income" for a given year. 26 U.S.C. § 172(c).

deductions, but he did not attach detailed schedules to his returns explaining the calculations underlying those deductions as is required by 26 C.F.R. § 1.172-1(c).[3]

In May of 2013, the Internal Revenue Service ("IRS") sent Jasperson a notice of deficiency stating that Jasperson owed  $44,341, $21,379, and $26,245 for tax years 2008–2010 and that he was being penalized $8,868, $4,275, and $5,249 for substantially understating his income for those years.  The IRS notice of deficiency stated that Jasperson's NOL deductions for 2008–2010 were disallowed because Jasperson could not substantiate that he incurred a deductible loss.

Jasperson challenged the IRS determination in the Tax Court.  Although the trial was originally scheduled for May 19, 2014, Jasperson requested a continuance because he needed extra time to provide "sufficient documentation . . . of 5215 Development Inc.'s operations and losses suffered in years 2005 and 2006."  The Tax Court granted Jasperson's motion and the trial was held in February 2015. Despite having nearly an extra year to marshal documents for the trial, Jasperson never provided his individual 2005 or 2006 tax returns, nor any source documents, such as invoices, credit card receipts and statements, bank statements, canceled checks, etc., that would provide direct evidence of 5215 Development's purported losses in 2005 and 2006.  Instead, Jasperson provided secondary information, like

---

[3] That regulation provides, "Every taxpayer claiming a net operating loss deduction for any taxable year shall file with his return for such year a concise statement setting forth the amount of the net operating loss deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the net operating loss deduction."  26 C.F.R. § 1.172-1(c).

charts prepared by his accountants, that were supposedly based on source documents—but those source documents were never provided to the IRS or the court.[4]

The Tax Court sustained the IRS determinations.  First, it determined that Jasperson did not provide any evidence that he properly followed the Internal Revenue Code's ("IRC") requirements for carrying forward NOLs, and as a result, could not utilize them in the 2008–10 returns.  Second, it determined that the accuracy-related penalties were appropriate because Jasperson failed to show that he gave accurate financial information to his tax preparers, and thus, he could not claim his substantial understatements were good-faith mistakes.  We affirm both determinations.

## II.

We review the Tax Court's findings of fact for clear error and conclusions of law de novo.  *Creel v. Comm'r*, 419 F.3d 1135, 1139 (11th Cir. 2005); 28 U.S.C. § 7482(a)(1).

## A.

In order to carry forward a NOL from a previous year, a taxpayer must comply with 28 U.S.C. § 172(b).  Section 172(b)(1)(A)(i)–(ii) requires that a

---

[4] Jasperson also moved the Tax Court to admit several other "secondary evidence" exhibits on the day of trial, which the Tax Court denied.  Jasperson had wanted to introduce ledgers, generated in 2014 by a 5215 Development employee, that showed balances in 2005 and 2006.  The Tax Court correctly held that these were not properly authenticated, and moreover, they would not have solved the problem of the absent source documents.

4

taxpayer first carry back the NOL two years from the loss year, and then, if the loss is not absorbed in the preceding two years, carry forward the remaining NOL to each year subsequent to the loss year for up to twenty years until the NOL is gone. In other words, for Jasperson to have properly carried forward his alleged NOL from 2005, he would have first had to carry back his loss to 2004, then 2003, then carry the NOL forward to 2006, then 2007, etc. The IRC does allow a taxpayer to waive the carryback requirement, but "[s]uch election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date . . . for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect." 28 U.S.C. § 172(b)(3). The regulations that set forth the manner the election must be made require that it "be made by a statement attached to the return (or amended return) for the taxable year" and that it "shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis for entitlement for making the election." 26 C.F.R. § 301.9100-12T(d).

Jasperson did not provide his tax returns from 2005 or 2006 to the Tax Court, the supposed years his NOLs took place. As such, there is no basis to assume that he properly waived the carryback requirement. *See Gatlin v. Comm'r*, 754 F.2d 921, 923 (11th Cir. 1985) (the burden is on the taxpayer to "come

forward with evidence to support his entitlement to [a] deduction and the amount of that entitlement."). And Jasperson has provided virtually no evidence regarding his finances for 2004 and 2003 to determine whether he carried his 2005 and 2006 NOLs back. Even the secondary evidence he provided is essentially silent on tax years 2003 and 2004.[5] The only witness other than Jasperson who was involved with 5215 Development during those years testified that he did not even know if the company was profitable in 2003. As a result, we cannot say the Tax Court clearly erred by holding that Jasperson failed to prove that he carried back his supposed 2005 and 2006 NOLs or that he validly waived the carryback requirement even if he could prove the NOLs took place.

## B.

Similarly, we cannot disturb the Tax Court's determination that the IRS correctly assessed penalties against Jasperson for substantially understating his income tax for 2008–2010. A taxpayer has substantially understated his income tax if the deficiency is greater than $5,000 or 10% of the tax required to be shown on the return for the taxable year. 26 U.S.C. § 6662(d)(1). Jasperson does not challenge that the deficiency determinations for 2008–2010 are greater than $5,000 Instead, he argues that he meets an exception the IRC provides for understating

---

[5] One exhibit, an excel spreadsheet created by 5215 Development, does cryptically state that the "2005 loss carryback to 2003" was "277,177." But we do not know when that was entered or what it was based on since nothing about 5215 Development's 2003 finances are in the record.

income tax—that the taxpayer acted with "reasonable cause" and in "good faith." 26 U.S.C. § 6664(c)(1). The burden is on the taxpayer to demonstrate "reasonable cause" and "good faith" once the IRS has shown a substantial understatement. 26 C.F.R. § 1.6664-4(a). Jasperson claims that his reliance on the outside accountants meets the exception. He is wrong.

Reliance on a tax professional can be the basis for meeting the "reasonable cause" and "good faith" exception, but the taxpayer must demonstrate that he provided accurate information to the tax professional. *Neonatology Assocs, P.A. v. Comm'r*, 115 T.C. 43, 99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002); *cf. Gustashaw v. Comm'r*, 696 F.3d 1124, 1139 (11th Cir. 2012) (In order to avail himself of the § 6664(c) exception because of reliance on a tax professional's advice, "the taxpayer must show that the advice was based on 'all pertinent facts and circumstances'" (quoting 26 C.F.R. § 1.6664-4(c)(1)(i))). Jasperson provided no evidence that his accountants had accurate information. As mentioned previously, he provided no source documentation to substantiate any of his 2005 and 2006 losses. An accountant who worked for the firm that prepared both 5215 Development's and Jasperson's individual returns testified at trial that the accounting firm did not "audit the numbers" Jasperson provided, meaning that it did only minimal due diligence. The accounting firm relied on Jasperson and 5215 Development to provide accurate information, and since this Court, no less than

the Tax Court, has no basis to assume that the information provided was accurate, Jasperson has not carried his burden to show his reliance on an outside tax professional meets the "reasonable cause" and "good faith" exception. Accordingly, the judgment of the Tax Court is affirmed.

**AFFIRMED.**