T.C. Memo. 2017-156

UNITED STATES TAX COURT

ANN E. DYKSTRA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8984-15L.                    Filed August 8, 2017.

Ann E. Dykstra, pro se.

<u>Lesley A. Hale</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  Petitioner, while residing in California, timely petitioned the

Court for review of respondent's two Notices of Determination Concerning

Collection Action(s) Under Section 6320 and/or 6330,[1] sustaining the Notice of

_____

[1] Unless otherwise indicated all section references are the Internal Revenue
(continued...)

**[\*2]** Intent to Levy and the filing of a Notice of Federal Tax Lien with respect to petitioner's outstanding Federal income tax liabilities for 2005, 2008, and 2011. The issue for decision is whether respondent may proceed with the collection actions identified in the notices of determination.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

## I. Petitioner's 2005 Tax Year

Petitioner, a real estate professional, timely requested and was granted an extension of time to file her 2005 Federal income tax return until October 15, 2006. When she filed the extension request, she made a payment of $30,000 toward her 2005 tax liability. She did not file her 2005 tax return by the October 15, 2006, due date. As a consequence respondent moved petitioner's $30,000 payment to an "Excess Collections" account. On July 1, 2008, respondent also prepared a substitute for return for petitioner's 2005 tax year. On April 29, 2013, petitioner filed her 2005 tax return. On December 23, 2013, respondent assessed

---

[1](...continued)
Code (Code) of 1986, as amended and in effect at all relevant times. Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] income tax of $42,537, an addition to tax for failure to file timely under section 6651(a)(1) of $10,587, and interest of $23,243.

## II. Petitioner's 2007 Tax Year

Petitioner also timely requested and was granted an extension of time to file her 2007 Federal income tax return until October 15, 2008. When she filed the extension request, she made a payment toward her 2007 tax liability, of which $19,353 was credited toward that liability. She did not file her 2007 return until August 1, 2013. Her account transcript reflects an entry for "Disallowed claim" dated November 24, 2014, and shows that a payment of $10,647 made on April 15, 2008, was removed from her account.

## III. Petitioner's 2008 Tax Year

Following a similar pattern, petitioner timely requested and was granted an extension of time to file her 2008 Federal income tax return until October 15, 2009. She did not file her 2008 tax return until September 9, 2013. On her 2008 tax return she claimed credit for an overpayment from 2007 of $10,647. (While the 2008 return is not part of the record, we accept petitioner's testimony on this point.) Respondent assessed income tax of $149,995, an addition to tax for failure to make estimated tax payments under section 6654(a) of $628, an addition to tax for failure to file timely under section 6651(a)(1) of $33,486, an addition to tax for

**[*4]** failure timely to pay tax shown under section 6651(a)(2) of $37,207, and interest of $30,718. Respondent's assessment did not take into account the claimed $10,647 credit.

IV. Petitioner's 2011 Tax Year

Petitioner likewise timely requested and was granted an extension of time to file her 2011 Federal income tax return until October 15, 2012. She did not file her 2011 tax return until October 15, 2013. Respondent then assessed income tax of $30,087, as reported on petitioner's original return, along with an addition to tax for failure to make estimated tax payments under section 6654(a) of $149, an addition to tax for failure to file timely under section 6651(a)(1) of $2,539, an addition to tax for failure timely to pay tax shown under section 6651(a)(2) of $1,128, and interest of $637. Petitioner filed two successive 2011 amended tax returns in June and July 2014. The first amended return claimed a refund of $13,469. An attached explanation stated that "[a]n Amended Return is being filed to include an NOL carryback from the year 2013 and to correct Mortgage Interest paid due to a corrected 1098 received on February 10, 2014, from Bank of America." The second amended return claimed an additional refund of $2,358. An attached statement explained that "[a] Second Amended Return is being filed to include payments made by the Taxpayer to the State of California payments not

**[*5]** included in the original return or the first amended return." The statement further explained that "[d]ue to prior years payments made to the State of California, Schedule A increases by $90,549.00." The record does not include any supporting documentation regarding those payments to the State of California.

Petitioner did not file her 2005 return timely (within the extension period) because she became overwhelmed by work and had retained her longtime accountant in Utah, who did not prioritize her return. When the financial meltdown began in 2007, which was a very stressful time for petitioner especially given her job in real estate, her delinquent returns "started piling up". Ultimately, petitioner hired a new accountant. She worked with the new accountant to file all of the overdue returns and was current with her filing obligations by the end of 2013.

V. Collection Hearing

On March 17, 2014, respondent issued to petitioner a Notice of Intent to Levy and Notice of Your Right to a Hearing for her tax liabilities for 2005, 2008, and 2011 (levy notice). On March 27, 2014, respondent filed a Notice of Federal Tax Lien for those years and issued petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice). At that time,

[*6] petitioner's assessed liabilities for 2005, 2008, and 2011 were $75,177, $214,238, and $15,736, respectively (totaling $305,151).

Petitioner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, with respect to the levy notice (levy request) and a second Form 12153 with respect to the lien notice (lien request). On both requests petitioner checked the boxes requesting an Installment Agreement and an Offer-in-Compromise (OIC). Both requests were submitted by Kathleen Miller, an attorney representing petitioner. In an attachment to her levy request petitioner stated, in part, the basis for her request:

> 1. It does not appear that all available payments and credits have been recognized and applied by the IRS to the tax years which are subject of the Notice. For example, the transcript of account for 2005 provided by the IRS indicates receipt and removal of a $30,000.00 payment made by Taxpayer for said year.

> 2. Taxpayer seeks abatement of the penalties and asserts that the late filing and payment is due to reasonable cause and not willful neglect.

> 3. Taxpayer desires to negotiate an installment agreement, offer in compromise or alternative means in which to pay liabilities determined due for the subject years.

In an attachment to her lien request petitioner added the following to the statements above: "4. Taxpayer will be requesting a Certificate of Discharge from Federal Tax Lien with respect to the possible sale of real property".

**[*7]**  Both of petitioner's requests were assigned to Settlement Officer Sylvester R. Fernando (SO Fernando).  On June 24, 2014, SO Fernando conducted a face-to-face administrative hearing with petitioner and her representative, William Shine.  Among the documents petitioner submitted before the hearing was a Form 433-A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, reporting equity of $600,299 in various assets (including real property, investments, and retirement accounts) and negative income.  During the hearing petitioner advised SO Fernando that she had decided not to file a Form 656, Offer in Compromise, and wanted to proceed with an installment agreement.  SO Fernando requested a revised Form 433-A (OIC) for an installment agreement along with supporting documentation by July 8, 2014.  After granting one extension, SO Fernando called petitioner on August 6, 2014, to advise her that he had not received her revised Form 433-A, that it had been over a month since their face-to-face hearing, and that he was going to close the case.  Petitioner advised SO Fernando that she wanted to make a partial payment.  SO Fernando explained that she could do so but that the partial payment would not be an installment agreement payment.

Petitioner then submitted a Form 656, a revised Form 433-A (OIC), an application fee of $186, and a deposit of $1,000.  On the Form 656 she checked

[*8] the box indicating "Exceptional Circumstances (Effective Tax Administration)" and in explanation stated that "I have been unemployed since January of 2014. I am hoping to avoid selling my securities and my retirement accounts, due to causing more taxable income with penalties on top of an [sic] capital gains I may incur. I am offering what I can afford at this time." Under the "Periodic Payment" section of the Form 656 petitioner incorrectly entered $1,000 as the amount of the offer and then stated that she would make installment payments of $1,000 per month "until paid", even though this section of the Form 656 states that the duration of installment payments cannot exceed 24 months and that "[t]otal payments must equal the total offer amount". The revised Form 433-A again reported equity of $600,299, reported positive income along with expenses exceeding that income, and indicated an offer of "$1000.00/mo".

Petitioner also provided other documentation in support of her offer. (The record is unclear when the additional information was provided, but the timing is not relevant to our analysis.) Included among the documentation were financial information, copies of various returns for relevant years, a detailed explanation of why she had fallen behind on her tax filings and payments, and a discussion of the financial meltdown and its effect on her and her work, along with supporting information regarding the financial meltdown. Copies of the two amended tax

[*9] returns for 2011, the 2013 return, and the corrected Form 1098, Mortgage

Interest Statement, were included in the documents submitted to SO Fernando.

SO Fernando called petitioner on February 3 and again on February 6, 2015,

to advise her that he was rejecting her offer, her request to credit the $30,000

payment for 2005, and her request for penalty abatement. SO Fernando reviewed

the administrative file to verify that the requirements of any applicable law and

administrative procedure had been met. In his Appeals Case Memorandum

explaining his rejection of petitioner's offer, SO Fernando calculated petitioner's

total reasonable collection potential to be $840,750. He calculated petitioner's

"Monthly Surplus of Income over Expenses" to be $3,678. Multiplying this

amount by the 47 months he determined were left in the period of limitations for

collection, he calculated petitioner's "Value of Future Income" to be $172,866.

He calculated petitioner's net realizable equity in financial assets to be $320,455,[2]

80% of the quick sale value of her real estate to be $329,829, and the quick sale

value of her vehicles to be $17,600. He stated that petitioner's offer was $1,000.

He also noted that petitioner had failed to disclose pension income (of $6,739 per

_____

[2] The differences between the values that petitioner reported on her Form 433-A and the values that SO Fernando used appear largely to be attributable to the fact that SO Fernando used 100% of the value of all of petitioner's financial assets whereas Form 433-A allows taxpayers to discount (report less than 100% of) the value of investment and retirement accounts, which petitioner did.

[*10] month), failed to file a return for 2005, and failed to make sufficient estimated tax payments for 2014.  On March 2, 2015, respondent issued notices of determination sustaining the proposed collection actions.

At trial respondent conceded that the $30,000 payment made in 2006 would be credited to petitioner's account for 2005, with corresponding reductions to additions to tax and interest.  Petitioner raised two additional issues that respondent argues were not raised before SO Fernando:  (1) the crediting of an overpayment of her 2007 tax toward her outstanding 2008 liability and (2) a refund for 2011 based on her amended returns for that year.

OPINION

A taxpayer may request an administrative hearing by the Appeals Office to review a proposed collection action upon receipt of a notice of the proposed action (such as the lien notice and the levy notice sent to petitioner).  Secs. 6320(b)(1), 6330(b)(1).  At the hearing with an Appeals settlement officer the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed collection action.  Secs. 6320(c), 6330(c)(2)(A).  A taxpayer may challenge the existence or amount of her underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).  The settlement officer must consider whether the proposed

**[\*11]** collection action balances the need for efficient collection against the taxpayer's concern that collection be no more intrusive than necessary. Sec. 6330(c)(3)(C). The settlement officer also must verify that the requirements of any applicable law and administrative procedure have been met. Sec. 6330(c)(1). Once the settlement officer makes a determination, the taxpayer may appeal the determination to this Court. Sec. 6330(d)(1).

In reviewing a determination under section 6320 or 6330 we consider only issues that the taxpayer properly raised during the administrative hearing. Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). A taxpayer does not properly raise an issue, including an issue concerning her underlying tax liability, if she "fails to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to present such evidence." Secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see Pough v. Commissioner, 135 T.C. 344, 349 (2010). The taxpayer also must raise the issue in her petition to this Court. Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

Where the validity of the taxpayer's underlying liability is properly at issue during the administrative hearing, we review the Appeals Office's determination

[*12] of that issue de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000).

Where there is no dispute as to the taxpayer's underlying liability, we review the

Appeals Office's determination for abuse of discretion. Goza v. Commissioner,

114 T.C. 176, 182 (2000); see also Sego v. Commissioner, 114 T.C. at 609-610.

An abuse of discretion exists when a determination is arbitrary, capricious, or

without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301,

320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). A decision on the basis of an

erroneous view of the law or a clearly erroneous assessment of facts would

constitute an abuse of discretion. Keller v. Commissioner, 568 F.3d 710, 716 (9th

Cir. 2009), aff'g in part T.C. Memo. 2006-166.

I. New Issues

We first dispose of two issues that respondent claims petitioner raised for

the first time at trial: (1) application of an overpayment from 2007, a year that is

not before us, against petitioner's outstanding liability for 2008, a year that is

before us, and (2) application of an overpayment claimed in an amended return for

2011, a year that is before us, against petitioner's outstanding liability for 2008.

A. 2007 Overpayment

The record before us is unclear as to whether petitioner or her

representatives raised the issue of the 2007 overpayment during the administrative

[*13] hearing or in their various exchanges with SO Fernando. While petitioner's levy request and lien request state that "[i]t does not appear that all available payments and credits have been recognized and applied by the IRS to the tax years which are subject of the Notice", the example given of the failure was the missing $30,000 payment for 2005. Petitioner's testimony was unclear as to whether she or her representatives discussed the 2007 overpayment with SO Fernando. We need not resolve this ambiguity, however, because we find that, even if we assume that the issue is properly before us under Giamelli v. Commissioner, 129 T.C. at 115, petitioner's claim for refund or credit for an overpayment for 2007 was too late for her to receive credit for the payment she had made on April 15, 2008, toward her 2007 liability.

While the 2007 return is not in the record, the transcript indicates that it was filed on August 1, 2013. And the 2008 return claiming the credit for the overpayment was filed on September 9, 2013. Under the provisions of section 6511(b)(2)(A), if a refund claim was filed within three years of the filing of the return (as we assume here because the 2007 return itself seeks the refund), then the taxpayer is entitled to a refund of tax paid within the three years immediately preceding that claim. Petitioner offered a transcript of her account for 2007 showing that there was a payment and a payment removed, in the amount she

[*14] seeks to have credited, on April 15, 2008--which is more than three years

before her refund claim.[3]  Therefore she is not entitled to credit for the

overpayment against her liability for 2008.  See Landry v. Commissioner, 116 T.C.

60 (2001).  We distinguish this payment from the $30,000 payment petitioner

made on April 15, 2006, toward her 2005 liability that respondent concedes should

be credited to her account.  For that payment, petitioner was not making a refund

claim but was seeking credit for that payment against her outstanding liability for

2005.

B.  2011 Refund Claim

We likewise found no reference in SO Fernando's case activity report to the

2011 refund that petitioner claimed on her amended 2011 returns, but petitioner

did provide copies of those amended returns to SO Fernando, along with other

---

[3] Respondent also argues that we lack jurisdiction over whether the 2007 overpayment should be credited because it is a year not before us and credit was not already determined to be available by a court or by the Commissioner, citing Weber v. Commissioner, 138 T.C. 348 (2012).  But there we concluded that we have jurisdiction to consider an election to apply an overpayment claimed from a noncollection year on a subsequent collection year return.  As we explained in Conn v. Commissioner, T.C. Memo. 2011-166, 2011 WL 2709887, at *5, while our jurisdiction may permit us to consider overpayment claims arising from nondetermination years, we still cannot credit alleged overpayments that were not timely asserted or litigated pursuant to the refund provisions of the Code.  We determined that the taxpayer in Weber met those threshold requirements.  Weber v. Commissioner, 138 T.C. at 365.  Petitioner did not.

[*15] documents. We will treat her 2011 tax liability as properly before SO Fernando and therefore subject to our de novo review. Petitioner bears the burden of establishing that she is entitled to the additional deductions claimed on her amended returns. Deductions are a matter of legislative grace, and petitioner must prove her entitlement to deductions. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). She was represented in the administrative hearing by a lawyer and an accountant. The only documentation in the record that supports her claimed deductions on her 2011 amended returns is (1) the 2013 return supporting the net operating loss (NOL) carryback claim; and (2) the corrected Form 1098. Because she provided no documentation to support deductions of prior payments to the State of California, we reject her refund claim to the extent it is attributable to those payments.

As to the NOL carryback from 2013, we have held repeatedly that taxpayers cannot rely solely on their own income tax returns to establish the losses they sustained. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979). "The fact that a return is signed under penalty of perjury is not sufficient to substantiate deductions claimed on it." Id. (citing Roberts v. Commissioner, 62 T.C. 834, 837, 839 (1974)). Taxpayers instead must produce underlying source documents to

[*16] prove the losses they are reporting. See Jasperson v. Commissioner, T.C. Memo. 2015-186, at *7, aff'd, 658 F. App'x 962 (11th Cir. 2016). We therefore must reject her claim to the extent it is based on the NOL carryback from 2013. That leaves the corrected mortgage interest deduction. Respondent did not provide any reason why that corrected Form 1098 is not sufficient to support the deduction of that corrected amount. We therefore will allow petitioner that deduction. As the record does not indicate how allowing that deduction will change petitioner's underlying liability, we will direct the calculation of the liability computations consistent with our conclusions here.

## II. Additions to Tax

Respondent does not argue that petitioner had a prior opportunity to challenge the additions to tax (which petitioner called "penalty abatement") but asserts that we review respondent's determination to uphold the imposition of additions to tax for the relevant years for abuse of discretion. We disagree. A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the Commissioner seeks to collect. Sec. 6330(a)(1); see Gray v. Commissioner, 138 T.C. 295, 300 (2012); Katz v. Commissioner, 115 T.C. 329, 339 (2000); Nutrition Formulators, Inc. v. Commissioner, T.C. Memo. 2016-60, at *16. Because nothing in the record indicates that petitioner had a prior

[*17] opportunity to challenge her underlying liabilities, we review de novo petitioner's request for redetermination of her liability for the additions to tax. See Sego v. Commissioner, 114 T.C. at 610. Petitioner has the burden of proof as to any defenses. See Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Petitioner was assessed the following: section 6651(a)(1) additions to tax for failure to timely file a return, with respect to 2005, 2008, and 2011; section 6651(a)(2) additions to tax for failure to pay tax shown on a return on or before the date prescribed (taking into account any extension of time for payment), with respect to 2008 and 2011; and section 6654(a) additions to tax for failure to make estimated tax payments, with respect to 2008 and 2011.

The additions to tax under section 6651(a)(1) and (2) will not apply if petitioner can show that her failure was due to reasonable cause and not willful neglect. Reasonable cause exists for purposes of section 6651(a)(1) if the taxpayer makes a satisfactory showing that she exercised ordinary care and prudence and was nevertheless unable to file the return within the prescribed time. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Reasonable cause exists for purposes of section 6651(a)(2) if the taxpayer makes a satisfactory showing that she exercised ordinary care and prudence in providing for payment of her tax liability

[*18] but nevertheless either was unable to pay the tax timely or would suffer undue hardship if the payment were made on time. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The section 6654 addition to tax is mandatory unless the taxpayer satisfies one of the computational exceptions in section 6654(d) or the other exceptions in section 6654(e). See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

Petitioner testified that she did not meet her filing and payment obligations because she was overwhelmed by work and then the financial crisis and its effect on her livelihood. While these were difficult times for petitioner, her explanation does not demonstrate that she exercised ordinary care and prudence in meeting her obligations. Petitioner did not argue, nor does the record suggest, that any of the exceptions in section 6654 would apply. We therefore sustain respondent's determinations as to the additions to tax.

III. Rejection of Collection Alternative

We now turn to respondent's denial of petitioner's request for an OIC or an installment agreement. Section 7122 authorizes the compromise of a taxpayer's Federal income tax liability, and regulations adopted under that section set forth three grounds for compromise: (1) doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration. Sec. 301.7122-1,

**[*19]** Proced. & Admin. Regs.  With respect to the third ground, paragraph

(b)(3)(i) of the regulation allows for a compromise to be entered into to promote

effective tax administration where collection in full could be achieved but would

cause economic hardship.  Paragraph (c)(3)(i) of the regulation sets forth factors

that would support (but are not conclusive of) a finding of economic hardship.

Those factors include:

> (A) Taxpayer is incapable of earning a living because of a long term illness, medical condition, or disability, and it is reasonably foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition;

> (B) Although taxpayer has certain monthly income, that income is exhausted each month in providing for the care of dependents with no other means of support; and

> (C) Although taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and liquidation of those assets to pay outstanding tax liabilities would render the taxpayer unable to meet basic living expenses.

SO Fernando made two factual errors in evaluating petitioner's OIC on the

basis of effective tax administration.  First, he concluded that petitioner had not

yet filed a 2005 tax return.  Respondent offered no explanation for SO Fernando's

failure to find information regarding the filing of petitioner's 2005 return and

petitioner's account transcript reflects the filing.  Second, he concluded that

petitioner made an offer-in-compromise of $1,000 in total rather than installment

[*20] payments of $1,000 per month, as she intended. Given the back and forth between SO Fernando and petitioner and her representatives regarding an installment agreement or an offer-in-compromise, this may not have been an error as SO Fernando's notes indicate that petitioner advised him that she wanted to make a partial payment. But we conclude that treating petitioner's improperly completed Form 656 proposing an payment of $1,000 per month "until paid" as an offer of only $1,000 is not a reasonable interpretation of the offer on the Form 656.

Notwithstanding these errors, we cannot conclude that SO Fernando's rejection of petitioner's offer was an abuse of discretion. He was correct that petitioner had a history of noncompliance during the relevant years, even had he discovered the filing of the 2005 return in 2013. Further, we see no fault with his conclusion that petitioner could pay her outstanding liabilities (or at the least a far larger proportion of these liabilities). Petitioner did not challenge SO Fernando's inclusion of her pension income in his calculation of the value of her future income. And petitioner's Form 433-A valued her assets at over $600,000, well in excess of her assessed liabilities of $305,151. SO Fernando may not have been reasonable in construing petitioner's offer as a $1,000 OIC rather than an installment agreement of $1,000 per month for some unspecified duration. But

[*21] even had he assumed that the offer was for $1,000 per month for 47 months (the duration he used in calculating petitioner's "Value of Future Income"), the offer would have been $47,000, an amount far below the value of her financial assets. Therefore we find his errors to be harmless.

On the basis of our review of the administrative record and notice of determination, the Court concludes that the settlement officer satisfied the verification requirements of section 6330 and that respondent's collection action should be sustained, with appropriate reductions to petitioner's liabilities for 2005 and 2011 to be determined, consistent with our conclusions above.

We have considered all arguments made in reaching our decision and, to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing and respondent's concession,

An appropriate order will be issued.