# United States Tax Court

T.C. Memo. 2022-73

THOMAS E. KELLY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 13353-21L.                                  Filed July 13, 2022.

————

*Frank Agostino*, for petitioner.

*Marissa J. Savit* and *Thomas A. Deamus*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case, petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1) of a determination by the Internal Revenue Service (IRS or respondent) to uphold collection actions.[1] Respondent has filed a Motion for Summary Judgment. Petitioner objects to the Motion, challenging the propriety of the collection actions and his underlying liability for additions to tax. We will grant the Motion in part.

### Background

The following facts are derived from the pleadings, the parties' motion papers, and the declarations and exhibits attached thereto. They are stated solely for purposes of deciding respondent's Motion and not

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] as findings of fact in this case.  *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Petitioner is a securities broker in New York City, where he resided when he petitioned this Court.  During 2013–2015 he earned between $1 million and $2 million annually.  But he did not file timely Federal income tax returns reporting this income.

On December 22, 2017, petitioner filed a delinquent return for 2013 reporting adjusted gross income (AGI) of $1,919,000 and tax of $689,923.  He did not enclose full payment with his return.  The IRS duly assessed the reported tax and additions to tax under sections 6651(a)(1) (failure to file timely) and (2) (failure to pay) and 6654 (failure to pay estimated tax), plus interest.

On December 26, 2017, petitioner filed a delinquent return for 2014 reporting AGI of $1,496,287 and tax of $514,875.  He made no payments toward his 2014 liability.  The IRS duly assessed the reported tax and additions to tax under sections 6651(a)(1) and (2) and 6654, plus interest.

On January 17, 2018, petitioner filed a delinquent return for 2015 reporting AGI of $1,205,400 and tax of $403,096.  He made no payments toward his 2015 liability.  The IRS duly assessed the reported tax and additions to tax under section 6651(a)(1) and (2), plus interest.

As of September 2019 petitioner's outstanding liabilities for 2013–2015 exceeded $2.5 million.  On September 4, 2019, in an effort to collect these liabilities, the IRS issued petitioner Letter 1058, Notice of Intent to Levy and Notice of Your Rights to a Hearing (levy notice).  One week later, on September 12, 2019, the IRS issued petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing (lien notice), informing him that the IRS had filed two Notices of Federal Tax Lien (NFTLs).  Petitioner timely requested a CDP hearing for the levy notice and the lien notice.  He expressed interest in an installment agreement, withdrawal of the NFTL filings, and abatement of the additions to tax for all three years.

Petitioner's case was assigned to a settlement officer (SO1) in the IRS Independent Office of Appeals in New York City.  After verifying that petitioner's tax had been properly assessed, SO1 scheduled an in-person CDP hearing for March 25, 2020.  In the letter SO1 advised petitioner that, if he sought an installment agreement, he would need to

[*3] supply (among other things) proof that his "estimated tax payments [were paid] in full for the year to date."

Because of the COVID-19 pandemic, SO1 informed petitioner that an in-person hearing on March 25, 2020, would not be possible, but that the parties could confer by telephone or video conference. If petitioner still sought an in-person hearing, he was advised that the case would be put on hold. He opted for a future in-person hearing, so the case was delayed due to restrictions pertaining to COVID-19.

On January 7, 2021, petitioner's case was reactivated and reassigned to a new settlement officer (SO2). SO2 contacted petitioner and asked whether a telephone CDP hearing would be acceptable. Petitioner agreed, and SO2 scheduled the conference for February 10, 2021.

During the conference petitioner urged two grounds for abatement of the additions to tax.[2] He initially asserted that he qualified for "first time abatement" under an IRS administrative policy. SO2 explained that petitioner was ineligible for such relief: He had been noncompliant with his tax obligations in prior years, and the IRS had assessed the same additions to tax for 2012, the year immediately preceding the first year in issue.

Alternatively, petitioner urged that he had "reasonable cause" for failing to file and pay on time. He alleged that his wife, beginning in 2007, had been spending lavishly on luxury goods, causing marital and financial problems. He stated that in 2015 his wife filed for divorce, necessitating that he pay an "exorbitant" amount of money on legal fees and spousal support. These events, petitioner said, caused "financial hardship, emotional problems, and depression." SO2 rejected his request for abatement on this ground, noting his history of nonfiling, his "consistent high income," and his "lack of payment protocol."

Petitioner also urged that the NFTL filings be withdrawn. He told SO2 that these filings would be reported to the Central Registration Depository, a database maintained by the Financial Industry Regulatory Authority. Petitioner asserted that the NFTL filings would place a "mark" on his securities license, which might adversely affect his

---

[2] Before the telephone conference petitioner at one point requested "de novo review" of his reported tax liabilities. However, the record indicates that he abandoned this request and focused during the hearing solely on the additions to tax. He supplied SO2 with no evidence that his tax liability for 2013, 2014, or 2015 was less than the liability that he reported on his delinquent returns.

[*4] business and result in "significant hardship." SO2 declined to withdraw the NFTL filings, concluding that petitioner's assertions were insufficient to justify withdrawal under section 6323(j).

Finally, petitioner proposed a partial payment installment agreement (PPIA) offering payments of $30,000 per month. SO2 determined that he did not qualify for a PPIA under collection guidelines set forth in the Internal Revenue Manual (IRM). At that time petitioner had an unpaid tax liability of $250,000 for 2019 and was not current on his estimated tax payments for 2020. Rather than pay these liabilities, petitioner requested that they be "rolled into" the PPIA. SO2 rejected this request, explaining that this would result in the "pyramiding" of petitioner's tax liabilities.

On June 3, 2021, the IRS issued petitioner a notice of determination sustaining the collection actions, and he timely petitioned this Court. On February 10, 2022, respondent filed a Motion for Summary Judgment urging that SO2 correctly sustained the collection actions. Petitioner timely opposed the Motion, contending that SO2 erred in declining to abate the additions to tax, in upholding the NFTL filings, and in rejecting the proposed PPIA.

*Discussion*

A.   *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *See Sundstrand Corp.*, 98 T.C. at 520. Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts showing a genuine dispute for trial. Rule 121(d).

B.   *Standard of Review*

Sections 6320(c) and 6330(d)(1) do not prescribe the standard of review that this Court should apply in reviewing an IRS administrative

[*5] determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of a taxpayer's underlying liability is properly at issue, we review the IRS determination de novo. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly at issue, we review the IRS decision for abuse of discretion only. *See id.* at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

"A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the Commissioner seeks to collect." *Dykstra v. Commissioner*, T.C. Memo. 2017-156, 114 T.C.M. (CCH) 183, 187. Nothing in the record indicates that petitioner had a prior opportunity to dispute his underlying liability for the additions to tax assessed for 2013–2015. *See Montgomery v. Commissioner*, 122 T.C. 1, 9 (2004). We thus review petitioner's challenge to this liability de novo. *See Love v. Commissioner*, T.C. Memo. 2019-92, 118 T.C.M. (CCH) 94, 96.

C. *Underlying Tax Liability*

Petitioner contends that SO2 erred in finding him ineligible for "first time abatement." Under this policy, the IRS offers an administrative waiver of certain additions to tax. *See* IRM 20.1.1.3.3.2.1 (Nov. 21, 2017). To qualify for this waiver, the taxpayer must not have had any unreversed additions to tax for any of the preceding three years. *Id.* 20.1.1.3.3.2.1(4); *see Love*, 118 T.C.M. (CCH) at 96. Petitioner's account transcripts show that for 2012 the IRS assessed additions to tax under sections 6651(a)(1) and (2) and 6654, and that none of these assessments was abated or reversed. SO2 thus correctly determined that petitioner did not qualify for "first time abatement."

Petitioner alternatively argues that the failure-to-file and failure-to-pay additions to tax should be abated on grounds of "reasonable cause." *See* § 6651(a)(1) and (2). To prove reasonable cause for failure to file, the taxpayer must show that he "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." Treas. Reg. § 301.6651-1(c)(1). To prove reasonable cause for failure to pay, the taxpayer must show that he "exercised ordinary business care and prudence in providing for payment of his tax liability and nevertheless was either unable to pay the tax or would suffer undue hardship if he paid the tax on the due date." *Hardin v.*

**[\*6]** *Commissioner*, T.C. Memo. 2012-162, 103 T.C.M. (CCH) 1861, 1863 (citing Treas. Reg. § 301.6651-1(c)(1)).  "Except as provided in section 6654(e)(3)(B), no reasonable cause exception exists for the section 6654(a) addition to tax." *Bray v. Commissioner*, T.C. Memo. 2008-113, 95 T.C.M. (CCH) 1417, 1421.  Petitioner does not assert that he qualifies under subsection (e)(3)(B), which covers taxpayers who are "[n]ewly retired or disabled."

During the CDP hearing petitioner alleged that his wife initiated divorce proceedings on an unspecified date in 2015, leading to "significant financial hardship" and "depression."  He has not explained how his divorce proceeding excused his failures to satisfy his tax obligations during 2013, 2014, and the earlier portion of 2015.  He successfully conducted his securities business during 2013–2015, earning more than $1 million annually, and he has a history of tax noncompliance, dating back as far as 2009.  His allegations of financial hardship at the relevant times thus seem questionable.  In any event, financial hardship "generally does not affect a person's ability to file." IRM 20.1.1.3.3.3(1)(a) (Aug. 5, 2014).

For these reasons, we suspect petitioner faces a decidedly uphill battle in attempting to show "reasonable cause."  In considering respondent's Motion, however, we are obligated to construe facts and inferences drawn from them in the light most favorable to petitioner as the nonmoving party. *See Sundstrand Corp.*, 98 T.C. at 520.  Underlying liability questions are reviewed de novo, and the availability of a "reasonable cause" defense usually entails questions of fact ill-suited to summary adjudication. *See Estate of Wilbanks v. Commissioner*, 94 T.C. 306, 315 (1990) (noting that "reasonable cause" is "a matter for decision after trial and not on . . . motions for summary judgment").  We will accordingly deny respondent's Motion insofar as it seeks summary judgment regarding petitioner's underlying liability for the failure-to-file and failure-to-pay additions to tax.

D.    *Abuse of Discretion*

In deciding whether SO2 abused his discretion, we consider whether he (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no

**[\*7]** more intrusive than necessary." § 6330(c)(3); *see* § 6320(c). We conclude that SO2 satisfied all of these statutory requirements.

1. *Verification*

Petitioner contends that the IRS notified him of the NFTL filings more than five days after the filings were made. *See* § 6320(a)(2) (requiring that notice be given "not more than 5 business days after the day of the filing of the notice of lien"). Petitioner asserts that SO2 thus erred in verifying that "the requirements of any applicable law or administrative procedure have been met." § 6330(c)(1).

"If any person liable to pay any tax neglects or refuses to pay the same after demand," then a lien in favor of the United States arises automatically and attaches to all of that person's property and rights to property. § 6321. The filing of an NFTL ensures priority of the Federal Government's lien over most competing creditors. *See* § 6323. Within five business days after the NFTL is filed, the IRS must notify the taxpayer of the filing and inform him of his right to a CDP hearing. *See* § 6320(a).

The IRS filed two NFTLs: one in Philadelphia and the other in New York City. Respondent has supplied a copy of the Letter 3172 by which the IRS informed petitioner of the NFTL filings. The letter states that the IRS filed the NFTLs on September 12, 2019. The top right corner shows that the letter was mailed to petitioner the same day, and he does not dispute that fact.

Petitioner's account transcripts for 2013–2015 confirm that the NFTLs were filed in early September 2019. Each transcript states that, on September 6, 2019, a lien was "placed on assets due to balance owed." Although this date does not match the September 12 date referenced in the Letter 3172, the notification to petitioner was timely in either event. If the NFTLs were filed on September 6, 2019, a Friday, then the IRS was required to mail the notice to petitioner within five business days, i.e., by September 13, 2019. The Letter 3172, having been mailed on September 12, was therefore timely.[3]

---

[3] Petitioner invites our attention to a line on the NFTLs indicating that they were "prepared and signed" on August 29, 2019. But this merely shows the date on which the IRS officer filled out the forms; it does not establish (or supply any evidence of) the date on which the NFTLs were filed in the relevant county recorder's office.

[*8]   2.   *Proposed Installment Agreement*

Petitioner next argues that SO2 erred in rejecting his proposed PPIA. In reviewing that determination we do not make an independent evaluation of what would be an acceptable collection alternative. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); *Murphy*, 125 T.C. at 320. Rather, our review is limited to determining whether SO2 abused his discretion—that is, whether his decision to reject petitioner's offer was arbitrary, capricious, or without sound basis in fact or law. *See Thompson*, 140 T.C. at 179.

Section 6159 authorizes the Commissioner to enter into an installment agreement if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability. *See ibid.* Subject to exceptions not relevant here, the decision to accept or reject an installment agreement lies within the Commissioner's discretion. *See* Treas. Reg. § 301.6159-1(a), (c)(1)(i); *see also Kuretski v. Commissioner*, T.C. Memo. 2012-262, *aff'd*, 755 F.3d 929 (D.C. Cir. 2014).

The type of agreement that petitioner proposed was a PPIA, under which he offered to pay some (but not all) of his outstanding liabilities. The Commissioner has issued guidelines, set forth in the IRM, for settlement officers to follow in considering such proposals. *See Thompson*, 140 T.C. at 179. A prerequisite for approval of a PPIA is that the taxpayer be "in compliance with filing, withholding, federal tax deposit and estimated tax payment requirements." IRM 5.14.2.2.4(1) (Apr. 26, 2019). The requirement of current compliance as a condition of executing a PPIA "ensures that current taxes are paid and avoids 'the risk of pyramiding tax liability.'" *Hull v. Commissioner*, T.C. Memo. 2015-86, 109 T.C.M. (CCH) 1438, 1441 (quoting *Schwartz v. Commissioner*, T.C. Memo. 2007-155, 109 T.C.M. (CCH) 1377, 1379).

During the CDP hearing SO2 considered petitioner's proposal but pointed out that he had an unpaid tax liability of $250,000 for 2019 and was derelict in his estimated tax payments for 2020. After consulting the IRM, SO2 advised that petitioner would be eligible for a PPIA only after satisfying these current tax obligations. Petitioner declined to satisfy these obligations, so SO2 rejected his offer.

Petitioner urges that SO2 should have allowed him to roll his 2019 and 2020 liabilities into the PPIA. We disagree: Since petitioner was proposing a partial payment agreement with fixed monthly payments, adding his 2019 liability to his earlier liabilities would mean that

[*9] his 2019 liability would likely never be paid. Although SO2 could accept an installment agreement that included petitioner's current tax liabilities, SO2 "acted within [his] discretion in declining to do so." *Boulware v. Commissioner*, T.C. Memo. 2014-80, 107 T.C.M. (CCH) 1419, 1425, *aff'd*, 816 F.3d 133 (D.C. Cir. 2016); *see Orum v. Commissioner*, 412 F.3d 819, 821 (7th Cir. 2005) ("It would not do the Treasury any good if taxpayers used the money owed for [current years] to pay taxes due for [earlier years] . . . ."), *aff'g* 123 T.C. 1 (2004).

Considering petitioner's history of noncompliance, the magnitude of his outstanding liabilities, and his failure to comply with his ongoing obligations, we conclude that SO2 did not act arbitrarily or capriciously in rejecting his PPIA. Rejection of his offer was well within the guidelines set forth in the IRM. We have repeatedly held that a settlement officer does not abuse his discretion when he adheres to published IRM collection guidelines. *See Eichler v. Commissioner*, 143 T.C. 30, 39 (2014); *O'Donnell v. Commissioner*, T.C. Memo. 2021-34; *Savedoff v. Commissioner*, T.C. Memo. 2020-125.

### 3. *Lien Withdrawal*

Petitioner contends that SO2 abused his discretion in declining to withdraw the NFTL filings. Section 6323(j) authorizes withdrawal if (1) "the filing of such notice was premature or otherwise not in accordance with administrative procedures," (2) the taxpayer has entered into an installment agreement that renders the NFTL unnecessary, (3) withdrawal of the NFTL "will facilitate the collection of the tax liability," or (4) withdrawal of the NFTL "would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States." § 6323(j)(1).

SO2 correctly determined that the NFTLs were not premature and had been filed consistently with IRS procedures, so the first ground for withdrawal has no application here. SO2 properly rejected petitioner's proposed PPIA, so the second ground for withdrawal does not apply. The fourth ground is likewise inapplicable.

Petitioner urges the third ground for withdrawal, that withdrawal "will facilitate the collection of the tax." *See* § 6323(j)(1)(C). To qualify on this ground the taxpayer must supply the settlement officer with evidence that the existence of the NFTL adversely affects his ability to pay the tax liabilities. *See Hughes v. Commissioner*, T.C. Memo. 2011-294, 102 T.C.M. (CCH) 605, 606. "[W]e generally have no authority

**[\*10]** to grant relief based on a taxpayer's claim that a lien adversely affect[s] his . . . employment prospects." *Klika v. Commissioner*, T.C. Memo. 2012-225, 104 T.C.M. (CCH) 153, 155.

During the CDP hearing petitioner asserted that the NFTL filings had been reported to certain securities regulators and placed a "mark" on his business. This allegedly could "caus[e] investors to not do business with petitioner," possibly resulting in "a loss of business and income" and rendering him less able to pay his tax debt.

We are not persuaded. Petitioner's allegations concerning loss of future income were entirely speculative. They were also unquantified: Although he asserted that he might lose clients, he submitted no evidence showing that this had happened, that it was likely to occur, or that it would cause a meaningful reduction in future income. In short, petitioner supplied SO2 with no documentation to show that the existence of the NFTLs would meaningfully affect his ability to pay his tax debt.[4]

Even if petitioner could demonstrate that he was eligible for withdrawal, "[s]ection 6323(j)(1) is permissive, and nothing in it requires [the IRS] to withdraw the NFTL." *Berkery v. Commissioner*, T.C. Memo. 2011-57, 101 T.C.M. (CCH) 1258, 1260; *see* Treas. Reg. § 301.6323(j)-1(c) ("If the Commissioner determines conditions for withdrawal [of an NFTL] are present, the Commissioner may (but is not required to) authorize the withdrawal."). The record shows that petitioner has a long history of noncompliance. Despite earning more than $1 million annually, he has repeatedly failed to file tax returns and pay his tax liabilities on time. During the CDP hearing he refused to come into compliance even with his current obligations. Under these circumstances, SO2 did not abuse his discretion in declining to withdraw the NFTL filings.[5]

---

[4] One of petitioner's representatives submitted to SO2 a letter stating that the NFTL filings had caused petitioner's securities registration to be suspended in two states, Arkansas and Maryland. But neither this letter nor any other evidence submitted during the CDP hearing documented any actual loss of income or other concrete financial harm.

[5] Petitioner asserts that SO2 did not consider "whether removal of the lien would facilitate the collection." We disagree. In the notice of determination SO2 concluded that petitioner did not qualify for withdrawal "under any of the provisions listed under IRC 6323(j)," which includes subsection (j)(1)(C). In any event, SO2's case activity record shows that he properly considered petitioner's arguments.

**[\*11]** 4.  *Balancing*

Finally, petitioner argues that SO2 did not comply with section 6330(c)(3)(C) when upholding the proposed levy and NFTL filings.  That provision requires the IRS to balance "the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary."  Petitioner contends that SO2 failed to consider petitioner's financial situation and the undue hardship that the collection actions would allegedly pose.

We disagree.  At the time of the CDP hearing petitioner's outstanding liabilities for 2013–2015 exceeded $2.5 million.  These liabilities arose from his repeated failure to file returns and pay tax, despite earning between $1 million and $2 million annually.  During the hearing he refused to pay even his (comparatively modest) estimated tax liability for 2020.  SO2 plainly did not abuse his discretion in deciding that collection action was necessary.  And because petitioner did not  establish his eligibility for a collection alternative, such as a PPIA or lien withdrawal, SO2 did not err in concluding that the collection actions were "no more intrusive than necessary."  *See Lindley v. Commissioner*, T.C. Memo. 2006-229, 92 T.C.M. (CCH) 363, 368–69, *aff'd sub nom. Keller v. Commissioner*, 568 F.3d 710 (9th Cir. 2009).

In sum, we conclude that SO2 did not abuse his discretion in sustaining the proposed levy and NFTL filings.  However, because there is a genuine dispute of material fact with respect to whether petitioner qualifies for reasonable cause abatement of the section 6651(a)(1) and (2) additions to tax, the case (unless settled) will proceed to trial on this point.  We will therefore grant in part and deny in part respondent's Motion for Summary Judgment.

To reflect the foregoing,

*An appropriate order will be issued.*