# United States Tax Court

T.C. Memo. 2024-64

JOSEPH SPIEZIO AND LOUISE SPIEZIO,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 14296-21.                    Filed June 3, 2024.

————

*Richard Stephen Kestenbaum*, *Lawrence Kalkstein*, and *Scott L. Kestenbaum*, for petitioners.

*Gennady Zilberman*, for respondent.

### MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: This case arises from a notice of deficiency dated April 20, 2021, in which the Internal Revenue Service (IRS or respondent) determined a deficiency in Joseph F. Spiezio III and Louise M. Spiezio's (collectively, Spiezios) 2015 joint federal income tax of $147,807 and an accuracy-related penalty under section 6662[1] of $29,561. The IRS also determined a deficiency in the Spiezios' 2016 joint federal income tax of $461,217 and an accuracy-related penalty under section 6662 of $92,243.

Before trial the Spiezios conceded the adjustments to income as determined by the IRS in the notice of deficiency. The Spiezios continue

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*2] to claim a net operating loss (NOL) in tax year 2017 and seek to have this NOL carried back to tax years 2015 and 2016. Accordingly, the issues remaining for determination are whether the Spiezios are (1) entitled to claim an NOL of $3,700,000 (or some other amount) for tax year 2017 on their joint personal tax return that will be carried back to tax years 2015 and 2016 and (2) liable for section 6662 accuracy-related penalties for tax years 2015 and 2016. Finding that the Spiezios have failed to establish their claimed NOL, we will sustain the IRS's determinations.

FINDINGS OF FACT

This case was tried during the Court's New York City, New York, trial session. The parties have filed First and Second Stipulations of Fact with accompanying Exhibits, which are incorporated herein by this reference. Some facts have been stipulated and are so found. The Spiezios resided in New York when they timely filed their Petition.

I.    *Mr. Spiezio and His S Corporations*

Mr. Spiezio received a bachelor of science degree from St. John's University and a law degree from the City University of New York School of Law. In addition to operating R&S Waste Services, LLC (R&S), and Waste Services, LLC (Waste Services), for several years, he also built and operated a real estate business.

Mr. Spiezio formed R&S, a waste management business, on February 17, 2011, in New York. Effective February 17, 2011, R&S elected to be taxed as an S corporation. Mr. Spiezio owned 100% of the membership interests of R&S from its formation until its eventual merger with Waste Services on March 13, 2019. Waste Services elected to be taxed as an S corporation and was also owned by Mr. Spiezio.

II.   *The Pension Liabilities*

Before the formation of R&S, Rogan Brothers Waste Services, Inc. (Rogan Brothers), entered into collective bargaining agreements (CBAs) with Local 813 Insurance Trust Fund (Local 813), a union which represented Rogan Brothers drivers, helpers, mechanics, and welders. Local 813 administered multiemployer, labor management trust funds within the meaning of the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829. Under the CBAs, Rogan Brothers was required to pay monthly contributions to Local 813

[*3] (Pension Liabilities). Rogan Brothers was obligated to incorporate its CBAs into the sale or transfer of all or part of its business.

On December 23, 2010, the Local 813 trustees filed suit in the U.S. District Court for the Southern District of New York against Rogan Brothers for recovery of unpaid Pension Liabilities from years 2007 to 2009. The parties in this litigation settled in early 2011, and Rogan Brothers agreed to make monthly payments to Local 813 up to the amount of its outstanding Pension Liabilities. On February 17, 2011, Mr. Spiezio formed R&S in the State of New York. R&S then assumed control of Rogan Brothers' waste hauling business.

On August 15, 2012, the Local 813 trustees filed suit in the district court against Rogan Brothers seeking judgment for failure to make required Pension Liabilities payments as per its CBAs. On April 25, 2013, the trustees filed an amended complaint, which added R&S and Mr. Spiezio as parties to the suit. We refer to this action as the *CBA* litigation.

On March 28, 2018, the district court entered a judgment in favor of plaintiffs in the *CBA* litigation. *Trs. of Loc. 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc.*, No. 12-cv-6249, 2018 WL 1587058 (S.D.N.Y. Mar. 28, 2018). The judgment held R&S jointly and severally liable with Rogan Brothers and other defendants under the CBAs for $2,461,475 in unpaid Pension Liabilities and $1,473,461 in pension withdrawal liability. Additionally, R&S was held solely liable for $325,403 in unpaid Pension Liabilities. In total, the unpaid Pension Liabilities equaled $4,260,339. The district court judgment in the *CBA* litigation, however, dismissed all claims against Mr. Spiezio individually.

On August 28, 2018, the Local 813 trustees filed suit against Mr. Spiezio and other associated companies but not against R&S. In this suit the trustees sought to hold the defendants liable for the liabilities set forth in the *CBA* litigation judgment. We refer to this action as the *Spiezio* litigation.

On November 9, 2018, the Local 813 trustees, Mr. Spiezio, R&S, and the associated companies entered into a settlement agreement. This settlement agreement resolved the *CBA* litigation, including the district court judgment against R&S, as well as the pending *Spiezio* litigation. At the time of the settlement agreement the outstanding amount of the *CBA* litigation liabilities was $3,010,604. Mr. Spiezio and the other debtors, including Waste Services, agreed to pay $2,800,000 in

[*4] settlement of the outstanding Pension Liabilities.[2] The first $1,250,000 installment payment due under the settlement agreement was paid by Waste Services on or before December 31, 2018.

On February 7, 2019, the debtors filed an application for entry of confession of judgment in the district court, as required by the settlement agreement. Shortly thereafter, on February 13, 2019, Waste Services filed for chapter 11 bankruptcy. On this same date Mr. Spiezio filed a declaration with the bankruptcy court, which indicated (among other things) that Waste Services owed Pension Liabilities of approximately $1,550,000.[3]

On November 24, 2013, R&S and Waste Services entered into an agreement and plan of merger with Waste Services as the surviving company. However, the certificate of merger was not executed until March 11, 2019.[4] The plan of merger stated that the merger would "be consummated by filing certificates of merger"; the certificate of merger states the effective date of the merger was March 13, 2019.

Under the terms of the settlement agreement and an order of the bankruptcy court, Waste Services reached an agreement with the Local 813 trustees to resolve all claims for a payment of $2,300,000. In exchange the bankruptcy court relieved and discharged all parties, including R&S, Mr. Spiezio, and the associated companies, of all further liability with respect to the Pension Liabilities. On August 1, 2019, the sale of Waste Services' assets was completed, and a portion of the sale proceeds were used to pay the resolved claim of $2,300,000. On December 23, 2019, an order of dismissal was entered in Waste Services' bankruptcy case.

---

[2] The settlement agreement was reached on November 9, 2018. The parties agreed to pay the settlement amount in three installments: (1) $1,250,000 on or before December 31, 2018; (2) $1,250,000 on or before January 31, 2019; and (3) $300,000 on or before March 31, 2019. The Spiezios are attempting to claim an NOL in tax year 2017, before the settlement agreement was reached and before the installments were to be paid.

[3] Under Waste Services' bankruptcy proceeding, three proof of claims were submitted totaling $3,010,339 in Pension Liabilities.

[4] Respondent contends that the merger was completed, and R&S ceased to exist on February 1, 2017, because that was the projected effective date as first contemplated in the plan of merger. We do not accept this contention.

**[\*5]** III.  *The Spiezios' Tax Returns, Mr. Spiezio's S Corporations, and the Claimed Net Operating Loss*

The Spiezios timely filed Forms 1040, U.S. Individual Income Tax Return, for tax years 2015 and 2016 pursuant to extensions of time to file.[5] On July 15, 2019, the Spiezios filed Form 1040X, Amended U.S. Individual Income Tax Return, for tax year 2015. On July 31, 2019, the Spiezios filed Form 1040X for tax year 2016.

The Spiezios also timely filed Form 1040 for tax year 2017 pursuant to an extension of time to file. The Spiezios' original Form 1040 for tax year 2017 did not include a Schedule C, Profit or Loss From Business, nor did the original return claim an NOL. On September 2, 2019, the Spiezios filed Form 1040X for tax year 2017. On September 9, 2019, the Spiezios then filed a second Form 1040X for tax year 2017. The Spiezios first claimed the contested NOL in this second Form 1040X. On the Spiezios' Schedule C statement for tax year 2017 they claimed a deduction of $3,700,631 for "[l]egal/loss stlments [sic] etc."

R&S filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for tax years 2015 and 2016. The IRS sent a letter informing the Spiezios that the IRS had updated their records to show R&S as a single member limited liability company effective January 1, 2017. R&S did not file Form 1120S for tax year 2017.

Waste Services filed Form 1120S for tax year 2017. Waste Services filed Form 1120S for tax year 2019 and purported to file Form 1120X, Amended U.S. Corporation Income Tax Return, for tax year 2019. On its original Form 1120S for tax year 2019 Waste Services deducted $2,925,958 for payment of "Pension Liabilities"; however, on its Form 1120X this deduction was eliminated.

OPINION

I.  *Burden of Proof*

The Commissioner's determination of a taxpayer's tax liability is generally presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determination is improper. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section

---

[5] The Spiezios' original Form 1040 for tax year 2015 claimed an NOL carryforward of $1,755,200 from tax year 2011 and later. The Spiezios conceded this claimed NOL carryforward before trial.

[*6] 7491(a), if a taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability and meets other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. The Spiezios do not contend, and the evidence does not establish, that the burden of proof should shift to respondent as to any issue of fact. *See* I.R.C. § 7491(a)(2)(A) and (B). The Spiezios, therefore, bear the burden of proof.

## II.     *NOL Deduction*

### A.     *General Requirements*

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

Section 172 allows a taxpayer to deduct an NOL for a taxable year. The NOL amount is the aggregate of the NOL carryovers and NOL carrybacks to the taxable year. I.R.C. § 172(a). Section 172(c) defines an NOL as the excess of deductions over gross income, computed with certain modifications specified in section 172(d). *See, e.g., Amos v. Commissioner*, T.C. Memo. 2022-109, at *6 (citing *Jasperson v. Commissioner*, T.C. Memo. 2015-186, at *6, *aff'd*, 658 F. App'x 962 (11th Cir. 2016)), *aff'd per curiam*, No. 23-10532, 2024 WL 1406646 (11th Cir. Apr. 2, 2024).

An unused NOL is first required to "be carried to the earliest of the taxable years to which . . . such loss may be carried." I.R.C. § 172(b)(2); *McRae v. Commissioner*, T.C. Memo. 2019-163, at *23. Any excess NOL that is not applied in one year is then carried to the then-ensuing year. I.R.C. § 172(b)(2). Absent an election under section 172(b)(3), an NOL for any taxable year must be carried back 2 years and then carried over for 20 years. I.R.C. § 172(b)(1)(A), (2), (3). A taxpayer claiming an NOL must file with his return "a concise statement setting forth the amount of the [NOL] deduction claimed and all the material and pertinent facts relative thereto, including a detailed schedule showing the computation of the [NOL] deduction." Treas. Reg. § 1.172-1(c).

Furthermore, "[a] taxpayer who claims [an NOL] deduction bears the burden of establishing both the existence of the [NOL] and the amount that may be carried over to the year involved." *Chico v. Commissioner*, T.C. Memo. 2019-123, at *39 (citing *Keith v.*

[*7] *Commissioner*, 115 T.C. 605, 621 (2000)), *aff'd*, No. 20-71017, 2021 WL 4705484 (9th Cir. Oct. 8, 2021). "[T]axpayer[s] 'cannot rely solely on [their] own income tax returns to establish the losses [they] sustained.'" *Amos*, T.C. Memo. 2022-109, at *7 (quoting *Barker v. Commissioner*, T.C. Memo. 2018-67, at *13, *aff'd*, 853 F. App'x 571 (11th Cir. 2021)); *see also Wilkinson v. Commissioner*, 71 T.C. 633, 639 (1979).

Thus, to meet their burden, the Spiezios must provide convincing evidence regarding their purported incurrence of the NOL in tax year 2017 and the amount, if any, that may be carried back to tax years 2015 and 2016. *See* Rule 142(a); *Keith*, 115 T.C. at 621.

B.  *Summary of the Parties' Arguments*

Respondent contends the Spiezios are not entitled to claim this NOL deduction on their joint personal returns since the underlying expenses at issue, i.e., the Pension Liabilities, were incurred by R&S, but assumed and paid by its successor in interest Waste Service, a separate entity distinct from Mr. Spiezio, and were paid in a tax period other than tax year 2017. Respondent further disputes the Spiezios' claimed Pension Liabilities since neither the requirements of section 404(a)(1) nor the all events test found in section 461 has been satisfied.[6] Respondent also argues the Spiezios were not liable under the district court's judgment in the *CBA* litigation nor did they personally make any payments toward this liability. Finally, respondent contends the Spiezios are now judicially estopped from arguing Mr. Spiezio is personally liable for the judgment, since he has argued otherwise before the district and bankruptcy courts.

The Spiezios dispute respondent's contentions and claim they are now entitled to claim an NOL carryback from tax year 2017 to tax years 2015 and 2016. The Spiezios acknowledge they lack a sufficient basis in R&S (an S corporation) to claim the NOL on their personal return under section 1366; however, by electing R&S to be treated as a disregarded entity for federal tax purposes, the Spiezios argue, they are entitled to

---

[6] The general rule for accrual method taxpayers is that a liability is incurred and thus taken into account for federal income tax purposes once it has satisfied the all events test. *See, e.g., Hoops, LP v. Commissioner*, T.C. Memo. 2022-9, at *9–10, *aff'd*, 77 F.4th 557 (7th Cir. 2023). Under the all events test a liability is incurred for the taxable year when (1) "all the events have occurred that establish the fact of the liability"; (2) "the amount of the liability can be determined with reasonable accuracy"; and (3) "economic performance has occurred with respect to the liability." Treas. Reg. § 1.461-1(a)(2)(i); *see* I.R.C. § 461(h).

[*8] claim the loss on their Schedule C. Moreover, the Spiezios contend the NOL in question arose from business expenses for which Mr. Spiezio was personally liable as a result of a confession of judgment signed by him and which were ultimately paid using his funds.

C.    *Analysis*

As discussed, the Spiezios have the burden of demonstrating their entitlement to the deductions claimed. When deciding which taxpayer, the individual or the corporation, is entitled to deduct a given expense, courts have found that it is important to keep in mind that a corporation is a separate entity from its officers, employees, and shareholders. *See Moline Props., Inc. v. Commissioner*, 319 U.S. 436, 439 (1943). A corporation and its stockholders are separate entities, and the title to corporate property is vested in the corporation and not in the owners of the corporate stock. *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 331 (5th Cir. 1984).

We find the issue of Mr. Spiezio's personal liability through a confession of judgment, without any evidence of his payment of this liability, to be irrelevant since it does not result in a personal NOL.[7] The Spiezios' argument that they may deduct a $3,700,000 NOL on their 2017 personal tax return, which in turn could be carried back to tax years 2015 and 2016, is not supported by the facts before the Court.

First, before the 2019 merger Waste Services had its own separate corporate existence and tax filing obligations. On or about December 31, 2018, Waste Services made the first payment of $1,250,000 toward the Pension Liabilities. Following the first payment Waste Services filed for bankruptcy. After this first payment R&S and Waste Services merged. Following the 2019 merger Waste Services was the surviving company, and Waste Services assumed the obligations of R&S. Waste Services continued its separate corporate existence and maintained its own tax filing obligations. On or after August 1, 2019, and as part of the sale of assets by Waste Services under the supervision of the bankruptcy court, the final settlement payment of $2,300,000 was made. This payment resolved the Pension Liabilities. Since Waste Services paid the Pension Liabilities and is a separate legal entity for

---

[7] A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. I.R.C. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976).

**[\*9]** tax purposes, we find the Spiezios are not entitled to claim an NOL on their personal return in tax year 2017. Whether R&S was a disregarded entity is irrelevant here because R&S did not make any payments toward the Pension Liabilities.

Second, the evidence reflects that the underlying Pension Liabilities were not paid until after October 15, 2018. Contributions to qualified retirement plans are deductible in the taxable year paid. I.R.C. § 404(a)(1)(A); *see also* Treas. Reg. §§ 1.404(a)-1(c), -3(a). However, section 404(a)(6) provides that a payment will be deemed made on the last day of the preceding year when (1) the payment is on account of the preceding year and (2) the payment is made no later than the time prescribed by law for filing a return for the preceding year, including any extensions of the time to file. Accordingly, even if we were to assume the Spiezios were entitled to an NOL arising from these Pension Liabilities, under the Code[8] they must likewise demonstrate the payment was made on or before October 15, 2018, the day on which the Spiezios' 2017 return was due.[9] The facts determined at trial plainly show otherwise.[10]

III. *Accuracy-Related Penalties*

Respondent determined that the Spiezios are liable for accuracy-related penalties under section 6662 for tax years 2015 and 2016. Section 6751(b)(1) provides that no penalty "shall be assessed unless the initial determination of such assessment" was "personally approved (in writing) by the immediate supervisor of the individual making such determination." The Spiezios concede respondent has met his burden

---

[8] The accrual deduction of these Pension Liabilities for tax reporting purposes is not permitted. Courts have required actual "payment" of the contribution under section 404(a). *See Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 579 (1977); *see also Gillis v. Commissioner*, 63 T.C. 11 (1974); *Rollar Homes Inc. v. Commissioner*, T.C. Memo. 1987-166; *Busch v. Commissioner*, T.C. Memo. 1983-98, *aff'd*, 728 F.2d 945 (7th Cir. 1984).

[9] The Spiezios dispute respondent's efforts to disallow the claimed deduction under section 404 because the matter was not raised on brief. However, respondent's argument is merely addressing an argument that the Spiezios first raised after audit; namely, R&S is a disregarded entity, and therefore the lack of a basis in Waste Services under section 1366 should not be at issue.

[10] Since we have determined that the potential for a deduction for a contribution to a qualified retirement plan did not arise in tax year 2017, it is not necessary that we determine whether the Spiezios met the all events test under section 461. Accordingly, we refrain from ruling on this issue.

**[\*10]** under section 6751 and challenge the penalties only on the basis of their reasonable cause defense.

Pursuant to section 6662(a) and (b)(1), a taxpayer may be liable for a penalty of 20% on any portion of an underpayment of tax due to negligence or disregard of rules or regulations. Under section 6662(b)(2), a taxpayer may be liable for a 20% accuracy-related penalty on any portion of an underpayment due to a substantial understatement of income tax. An understatement of income tax is substantial for purposes of section 6662(b)(2) if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. I.R.C. § 6662(d)(1)(A). Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set out in section 6662(b). Treas. Reg. § 1.6662-2(c).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code and any failure to keep adequate books and records or to substantiate items properly. I.R.C. § 6662(c); Treas. Reg. § 1.6662-3(b)(1). "Disregard" means any careless, reckless, or intentional disregard. I.R.C. § 6662(c); Treas. Reg. § 1.6662-3(b)(2). Negligence is "strongly indicated" where the taxpayer "fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances." Treas. Reg. § 1.6662-3(b)(1)(ii).

The Commissioner bears the burden of production with respect to a taxpayer's liability for the section 6662(a) penalty and must produce evidence that the imposition of the penalty is appropriate. *See* I.R.C. § 7491(c); *see also Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). Respondent has introduced sufficient evidence to demonstrate that the Spiezios have failed to substantiate the NOL deduction—as originally filed or as now claimed. Respondent has thus established negligence and has met his prima facie burden. *See* Treas. Reg. § 1.6662-3(b)(1).

The accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. I.R.C. § 6664(c)(1). The determination whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis and depends on the pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b)(1).

**[\*11]** The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. *Id.* "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Id.*

Good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may also constitute reasonable cause. *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 98–99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002); Treas. Reg. § 1.6664-4(b); *see also United States v. Boyle*, 469 U.S. 241, 250 (1985).

This Court has stated that reasonable cause and good faith are present where the record establishes by a preponderance of the evidence that (1) the taxpayer reasonably believes that the professional upon whom the reliance is placed is a competent tax adviser who has sufficient expertise to justify reliance; (2) the taxpayer provides necessary and accurate information to the adviser; and (3) the taxpayer actually relies in good faith on the adviser's judgment. *Estate of Lee v. Commissioner*, T.C. Memo. 2009-84, 2009 WL 1118876, at \*5 (citing *Neonatology Assocs.*, 115 T.C. at 99).

While respondent has presented evidence that the Spiezios' tax preparer is a disbarred attorney, there was no evidence presented disputing his qualifications as a competent tax preparer. The Spiezios, however, are not permitted to ignore their obligation to ensure that their tax returns accurately reflected their income for the 2015 and 2016 tax years. Considering Mr. Spiezio's legal education and business experience, coupled with the Spiezios' knowledge of the prior IRS audits disallowing their earlier NOL carryforward, we cannot conclude that they relied on their tax preparer in good faith and that the incorrect returns resulted solely from their adviser's own errors.

Consequently, we hold the Spiezios have failed to establish a reasonable cause and good-faith defense under section 6664(c)(1) and find that they are liable for accuracy-related penalties under section 6662(a) and (b)(1) on the basis of their negligence.[11]

---

[11] In the alternative we could find that the Spiezios are liable for section 6662 accuracy-related penalties on the basis they substantially understated their income tax liabilities. *See* I.R.C. § 6662(b)(2).

**[\*12]** IV.    *Conclusion*

We will sustain respondent's determinations in the notice of deficiency.

We have considered all of the arguments that the parties made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*